H. H. McLANE v. R. H. BELVIN ET AL.

1. EXECUTORS—JOINT POWER.—Where, by will, three executors were appointed with authority to administer without control of the court of probate, and all qualify as such, it is incompetent for two of such executors to allow a claim against the estate.

2. JURISDICTION—CLAIMS AGAINST ESTATE.—The allowance by the Probate Court of a claim against an estate in the hands of executors, with power under the will to administer, &c., is without jurisdiction, and void as against the estate.

3. AMENDMENT—LIMITATION.—The original petition being upon an allowed claim, not mentioning the original demand on which the claim was based, did not stop limitation as to the original demand as a cause of action; limitation ran against it until by amendment it was set up in the petition.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

On the 4th of June, 1857, Asa Mitchell executed a prom-

issory note for $3,000, payable to William McLane, due on the 4th day of January, 1859, with twelve per cent. interest, payable annually, secured by deed of trust on certain lands in Bexar. Payments were made on the note from time to time until the 22d day of August, 1862, when the whole note was paid off in Confederate treasury notes, and the note surrendered up and a release of the deed of trust formally executed by I. A. Paschal, trustee and attorney of McLane. In November, 1865, Mitchell died testate, and appointed by his will his son, Hiram A. Mitchell, and his two sons-in-law, R. H. Belvin and W. J. Joyce, his executors, and provided, under the statute, that they should administer his estate without the intervention of probate courts, except to prove and record his will and file an inventory of his estate. In January, 1866, William McLane repudiated the Confederate-money transaction made in August, 1862, and demanded that the note should be paid over again. Two of the executors, Joyce and Belvin, consented to allow a claim against the estate of their testator for $3,672.51, with interest from 22d of January, 1866, at ten per cent. per annum. The other executor, Hiram A. Mitchell, refused to be a party to this arrangement, and expressly dissented from it, claiming that the debt was paid off by the acceptance of the $3,613 in Confederate money in 1862. In this shape the claim was presented to the Probate Court of Bexar county, and approved by A. Siemering, chief justice, on the 1st of March, 1866. On the 19th of February, 1869, plaintiff filed his original petition in the District Court of Bexar county, declaring on the claim for $3,672.51, reciting the allowance of the two executors, the approval of the probate judge, non-payment, and praying judgment. General denials were filed to save defaults, and on the 13th of October, 1873, the defendants filed their demurrer and amended answer setting up their defenses, and making A. J. and Wallace Mitchell, two of the heirs of Asa Mitchell, parties to the suit. The defendants, among other matters of law and fact, pleaded that it was not alleged,

nor was it true in point of fact, that the claim of plaintiff was ever allowed by all three of the executors, but that the claim was really rejected by one of them; that two of the executors had no authority under the law and under the will to bind the estate of their testator to pay money without the consent of the other executor, nor had the chief justice nor the Probate Court any jurisdiction to allow or approve a claim against the estate of Asa Mitchell; also pleading a general denial, payment, want of consideration, usury, illegal consideration, &c. On the 27th of October, 1873, plaintiff, William McLane, having died, H. H. McLane became plaintiff, and filed an amended petition, for the first time alleging that Mitchell had made a note and a deed of trust, and alleging that Mitchell, by writing, had, in consideration of an extension of time, agreed to pay the note on the 4th of January, 1861, and again on another extension promised, in writing, to pay the note on the 4th of January, 1863, or at any time before that Mitchell might choose, on giving McLane three months' notice. By these allegations it was sought to take the case out of the statute of limitations. Plaintiff further alleged that Mitchell offered him the money for his note in Confederate currency in the month of June, 1862, and that afterwards he (plaintiff) was arrested and tried before a military commission, and was acquitted, and on the 22d day of August, 1862, he, acting under advice of counsel, accepted payment in Confederate money under duress, &c., and instructed his trustee to release the deed of trust and surrender up the note; but that after the war was over, and Mitchell dead, he had called upon his executors to pay the debt, and that two of them allowed a portion of his claim, &c., and prayed in the alternative for the $3,672.51 and interest from January, 1860, or for the entire amount of the note and interest, and the enforcement of the lien, &c.

On the 5th of January, 1874, defendants again replied, and denying all allegations, especially deny the new promise of Asa Mitchell, or any other promise than that in the promis-

sory note and deed of trust, and any forbearance to execute the same by McLane at the request of Mitchell.

They also denied any duress when McLane received the money, and alleged that plaintiff received it willingly and eagerly, and that no lien exists on the land, and pleaded the statute of limitations; that more than four years had elapsed between the 4th of January, 1859, when the note fell due, and the 27th of October, 1873, when the amended petition of plaintiff was filed setting up the note of 4th of June, 1857. Upon these issues joined, the case came to trial on the 7th of January, 1874, and resulted in a verdict for defendants, from which, after motion of new trial overruled, plaintiff appealed.

*S. G. Newton*, for appellant.—The court instructed the jury upon only two points: that of duress and limitation.

It seems to me that the first prominent question to be discussed is, whether the court was right in excluding, as evidence of the debt, the statement of settlement as sworn to, accepted by two of the executors, and approved by the chief justice and the Probate Court while in session?

"The rights, powers, and duties of executors and administrators are to be governed by the principles of the common law, when not in conflict with the statute." (Paschal's Dig., art. 1396.)

At common law, "if a man appoint several executors, they are esteemed in law but as one person representing the testator, and therefore the acts done by any one of them are deemed the acts of all, and are of like binding effect, when within the scope of their appointment. (4 Bac. Abr., title Executors and Administrators, "D;" 1 Williams's Ex'rs, 777; Toll's Ex'rs, 407; 3 Red. on Wills, 222; 1 Wend., 583; 16 Johns., 273; 9 Cow., 34; 14 Wend., 90; 2 Litt.. 315; 4 Litt., 451; 14 Pet., 166; 11 Johns., 16.) And the principle and its application is fully recognized by this court in the case of Dean v. Duffield, 8 Tex., 235.

I here insert extracts from the will, as in evidence, from

which it will be observed that there is nothing in its terms or form affecting the rights, powers, and duties of executors at common law or by our statute:

"Fifth. I nominate and appoint my two sons-in-law, R. H. Belvin and W. J. Joyce, and my son Hiram A. Mitchell, executors, with full power to carry out the provisions of this my last will and testament, and to make final settlement and distribution of my estate among the heirs, as herein directed; and for this purpose my said executors are authorized to make sale of such property of my estate, not herein specially bequeathed, as they may believe necessary to pay expenses and debts, or as, in their opinion, cannot be conveniently and advantageously divided in kind.

"Sixth. It is my will and desire that my executors herein named shall not be required to give bond and security, nor do I wish any further action had on my estate in the County Court for the settlement of estates, than to admit to probate and record this my last will and testament, and file and record an inventory of my estate."

I think these authorities fully controvert the position of defendants, as well as the assumption by the court, that there was a want of authority in the executors. There is no pretense of fraud or deception charged or chargeable to plaintiff. There was a good reason why the compromise should be made. Full allowance was made for the value of and credit given for the Confederate money received under duress by an old man in his eighth decade; and if ever a good consideration moved to an amicable and equitable settlement, it moved in this.

There is a declaration by Mitchell in his will that he owed no one but Jacob Short—eight or nine hundred dollars. It may be that by reason of that, the executors desired the regular probate of the claim. If so, it does not in the least militate against its being received as evidence of the debt; on the contrary, it is strengthened, and entitled to greater consideration, under the doctrine laid down in the case of

32

Reynolds *v.* McFadden, 36 Tex., 129, to which I respectfully ask the attention of this court.

It is assumed by the pleadings that the non-signing executor, H. A. Mitchell, protested against the settlement; but this is not sustained by the evidence. Mitchell was himself on the stand and does not say so.. He says he refused to sign because he believed the debt paid, as he had seen the papers in his father's safe; but he does not say this refusal was brought to the knowledge of McLane; on the contrary, the evidence is that McLane was led to believe that he concurred in the settlement, and only failed to sign because not at home on the day.

But it is urged.that this act was the creation of a new debt, which required the .concurrent action of all the executors. This is not so; for the pleadings and evidence conclusively demonstrate that it was a compromise of an unsettled matter, which, if forced to the issue of law, would have resulted much more onerously to the estate. In every view in which I can consider the case, it appears that, in equity, plaintiff should have the benefit of his testimony; all objections to it are but technical, and should not be allowed to defeat the just rights of the parties. If plaintiff has not all the evidence and joint action of all the executors, it was because he was lulled into security and confidence by their acts; and even an estate cannot be profited by deception and fraud to the injury of a creditor and claimant against it.

Plaintiff, having failed to get his evidence of settlement admitted by the court, then undertook to make out his case under his alternative pleading, setting up the original obligation, and by his plea of duress seeking to avoid his act of canceling the debt through Paschal, trustee. To this, defendant replied by the statute of limitation.

That McLane was laboring under the disability of duress at the time the Confederate money was received for the original debt, is fully and overwhelmingly established by the

testimony. Indeed, there is no effort to contradict it, except inferentially.

In defendant's plea of the statute they had the sympathy of the court, for it instructed very broadly in their favor, and in such a manner as to cut plaintiff off from any benefit of the exceptions which he had presented. The instruction decided the case, and I think the court erred, and greatly erred, in giving it.

Again, I maintain that the amended petition, setting up the original cause of action, was not such a setting up of a new cause of action against which the statute would run, until the amendment filed, and to which character of cases the authorities refer, because the original petition was upon the new promise or cause of action which sprung out of and from the original, incidental to and a modification (only for the benefit of defendants) of the original indebtedness. Hence, the rule that, when the petition was on the original cause of action, limitation plead, and these amendments made, setting up a new promise, limitation runs against the new promise until plea filed, does not apply in this case.

In this case, it is not pretended that the bar had run at the filing of the original petition, either against the old or new promise. The original petition was upon the old, as modified by the new promise; the one was in close connection with and depended on the other, not an independent promise. Hence, I think this case comes within the rule of pleading laid down by this court in the case of Hill *v.* Clay, 26 Tex., 653. If defendants abruptly repudiate the new promise, or modified undertaking, after inducing plaintiff to rest his claim upon it, until the old is apparently barred, he·will not, in this case, be prevented from amending his pleadings, so as to bring his whole case before the court.

Suppose McLane had, in the first instance, sued upon the original claim, and the executors had set up the subsequent settlement, as being the more beneficial for the estate, would not McLane have been concluded by it?

Was he not bound by the settlement, and forced to seek his remedy and rely upon it, after what had transpired between the parties? The executors, acting in the interest of the estate, had committed McLane to a smaller amount than represented in the original claim—in fine, had made a good bargain for the estate. They cannot be permitted to so take advantage of it as to entirely defeat the plaintiff. And, as the executors—two or more of them—had the right to bind the estate, by acknowledging and promising to pay an existing claim, so they had the right, and it was their duty, to make a settlement, and, as they had the undoubted right to bind McLane, so should they be bound, when it is an undertaking for the benefit of the estate. And as, at the institution of his suit, he was not bound, neither will he be so, when amending, so as to bring his whole case before the court; making, not a new suit, but a more perfect statement of the original one, rendered necessary by the pleadings of the defendants.

It does not seem to me, that either the law or equity of the case will sustain the plea of limitation, on the facts presented. The court misled the jury by its instructions, and they were induced by it to bring in a verdict contrary to the law and evidence in the case.

*McLeary & Wurzbach*, for appellees.

*Peeler & Fisher*, also for appellees.

Moore, Associate Justice.—It is unnecessary for us to give any special consideration to most of the questions raised and discussed by counsel in this case, for it is quite apparent, from an inspection of the record, that appellant, who was the plaintiff in the District Court, failed to exhibit, either in his original or amended petition, any ground of action entitling him to a judgment, as prayed for, against the estate represented by appellees. If, therefore, it was conceded that the court erred in its rulings on other and subordinate points,

such error would afford no ground for the reversal of the judgment.

The ground of action upon which this suit was first brought, as appears from the original petition, is an *assumpsit*, or undertaking, by two of the executors of Asa Mitchell, deceased, without the assent of the third executor, and notwithstanding his positive refusal to join therein.

That power conferred, either by will or deed, on two or more executors or trustees, unless a different intention is expressed in, or can be properly inferred from, the will or instrument by which the power is conferred, cannot be legally and properly executed, unless all the parties to whom such power is delegated join in its execution, is too well settled for discussion, or to require the citation of authorities for its support.   (Hart *v.* Rust, 46 Tex., 556.)

It is not questioned that there may be cases where there is an imperfect or defective execution of a power conferred upon executors or trustees, which will be upheld and supported in equity, or where the executors or trustees will be required to complete its proper execution.   But it cannot be insisted that this action, as originally brought, makes any pretense of being a case of this kind.

By the terms of the will, all control of the Probate Court over the estate, so long as it remained in the hands and under the control of the executors, was limited to the probate of the will and the return and record of an inventory of the property.   It cannot, therefore, be pretended that the presentation of the claim upon which the suit is brought to the chief justice, after its allowance by the two executors, who were attempting, by their agreement with McLane, to bind the estate of their testator, and its approval and registration by him, gives it any force and validity than it otherwise had.

If it should be said that the allowance of the amount claimed by McLane, by the two executors by whom it was made, was not an original undertaking and promise by them as executors, but was merely a recognition of an existing in-

debtedness against the estate, it is answered, that the original debt, to which vitality was sought to be given by the action of these two executors, had been fully paid and satisfied by the testator, as he supposed and declared, in effect, in his will. But whether it had been legally discharged or not, certainly two of the executors could no more renew the obligation or bind the estate for its repayment, without the consent and in opposition to the express wish of their co-executor, than they could execute any other power delegated to them as executors by the will, without his joining therein; and if the approval of the two executors should be treated as of no effect whatever, then the suit should not have been brought, as it evidently was, in the first instance, on the agreement and undertaking of these executors, but it should have been upon the original demand, as was attempted to be done by the amended petition.

If the amended petition had been filed before limitation had run against the cause of action disclosed in it, it would have been necessary for us to consider the effect of its alleged payment in Confederate money, in connection with the circumstance under which it was made. But, as such was not the case, it is altogether unnecessary for us to do so; for, manifestly, whether we regard the amended petition as brought upon the note alleged to have been delivered up to Mitchell through duress, or for the recovery of damages sustained by such duress, it was barred before the amendment was filed.

Nor can it be properly said that the amended petition is merely an enlargement and correct statement of the cause of action disclosed in the original petition, and therefore limitation against it can only be computed to date from the filing of the suit. The claim or demand which McLane made against the estate of Mitchell was, no doubt, based upon or originated out of the note in payment of which, as he alleges, through duress, he accepted Confederate money. But the original action, as has been already said, was not brought

either upon the note or the alleged duress, but was grounded solely on the *assumpsit* or undertaking of the executors, Belvin and Joyce, to pay the amount for which the suit was brought.

There is no error in the judgment of which appellant can complain, and it is therefore affirmed.

AFFIRMED.