W. W. GRIGGS ET AL. V. LOUIE BREWSTER ET UX.

No. 5504.   Decided June 24, 1933.
(62 S. W., 2d Series, 980.)

*Harry A. Dolan,* of Georgetown, and *Hart, Paterson & Hart,* of Austin, for plaintiffs in error.

The District Court had no jurisdiction to take the property of the estate away from the executor and appoint a receiver in his place to administer the estate, as in doing so the District Court exercised original jurisdiction in probate matters.

Suit No. 8513 was brought by Davis Potts against the plaintiffs in error herein for the purpose of obtaining a construction of the will of his deceased wife, Marilda Potts, and for the purpose of having it adjudged that he as executor of the will of his wife had the right to sell sufficient land to pay community debts. The will of Marilda E. Potts, the deceased wife of Davis Potts, directed that the just and lawful debts against her and her estate should be paid. Davis Potts filed application to probate the will of his wife in Williamson County on December 21, 1918. The will was probated on the 8th day of January, 1919. He qualified as executor by taking the oath on the 8th day of January, 1919. The suit No. 8513 to construe the will and determine his right to sell for the purpose of paying debts was filed in the June term, 1919, of the District Court of Williamson County. The agreed judgment was entered on July 5, 1919.

Under the statutes Davis Potts as executor had the right to administer the estate and if he was acting in any way contrary to law or in any way to perform his duties as executor, the devisees had ample remedies under the statutes. Undoubtedly the District Court exceeded its jurisdiction in replacing the executor with a receiver. Allen v. Von Rosenberg (Sup., not reported), 16 S. W., 1096; Van Grinderbeck v. Louis (Civ. App.), 204 S. W., 1042; Grandfalls Mut. Irr. Co. v. White, 62 Texas Civ. App., 182, 131 S. W., 233; Deen v. Fuller (Civ. App.), 290 S. W., 829; Articles 3290, 3291, 3433, 3438, 3443, and 3449 of Revised Statutes.

*Nunn & Love* and *Wilcox & Graves*, all of Georgetown, for defendants in error.

The District Court, in cause No. 8513, had the power to render the judgment there rendered. Said court also had the power to execute the said judgment by any suitable or appropriate process. R. S., 1925, art. 3437; Lemmel v. Pauska, 54 Texas, 505; Ellis v. Mabry, 60 S. W., 571; Simmons v. Arnim, 110 Texas, 309, 220 S. W., 66; Cannon v. McDaniel, 46 Texas, 303; Gregory v. Ward, 118 Texas, 526, 18 S. W. (2d) 1049; Roy v. Whitaker, 92 Texas, 346, 48 S. W., 892.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

The opinion of the Court of Civil Appeals, to which we refer for a complete statement of this case, is reported in 16 S. W. (2d) 839.

We find it necessary to consider but one question, the validity of the judgment in Cause No. 8513, rendered in the District Court of Williamson County, described in the opinion of the Court of Civil Appeals in paragraphs 6, 7, and 8, as published. In so far as appears necessary, we will state the facts leading up to the controversy here involved.

On the 16th day of February, 1916, Davis Potts and his wife, Marilda Potts, owned as community property the lands involved in the instant case, and other property as well. On that day they each executed a will, the wills being somewhat similar in purpose and effect, disposing of all their property. Marilda Potts died November 11, 1918, and left her husband surviving. Her will was duly probated, and in accordance with its terms the husband, Davis Potts, was appointed independent executor, and entered upon his duties as such. At the time of the death of Mrs. Potts, the community estate of herself and husband owed debts amounting to $2,409.78, and her separate estate owed approximately $470. A controversy arose between Davis Potts, the independent executor, and the other devisees under the will of Mrs. Potts, and so, on the 24th day of February, 1919, Davis Potts, the independent executor, filed suit in the District Court of Williamson County for a construction of the will, and for directions as to the execution of its provisions. By appropriate pleading he made Zelpha T. Griggs, Osborne L. Griggs, Lois Christine Griggs, and W. W. Griggs and his wife, Minnie Griggs, parties defendant. The first three defendants named were children of W. W. Griggs and his wife, and were devisees in remainder under the will of Mrs. Potts, deceased, to the 158 acres involved in the present foreclosure suit,—the life estate in the land having been willed to Davis Potts. The will of Mrs. Potts directed that the defendants there named, W. W. Griggs and his wife, Minnie Griggs, should have full power to manage and control and use and enjoy all the lands and revenues from the 158 acres of land willed to their three children until Lois Christine Griggs arrived at the age of 21 years. The estate in remainder was, as stated before, charged with life interest to Davis Potts, the husband. The petition filed by Davis Potts described some five tracts of land, embracing not only the 158 acres here involved, but some real property in the town of Florence, in Williamson County, which he claimed as a homestead. The will was briefly described in the petition as follows:

"That by the terms of said will of Marilda Potts, deceased, she willed to the plaintiff all of her property, both real and

personal or mixed for the term of his natural life and at his death she desired and directed that all of her right, title and interest in and to the farm now owned and held by her and the plaintiff, situated in Williamson County, Texas, about three miles east of the town of Florence, being the farm and land hereinabove set out and described shall pass to and be vested in the said Zelpha T. Griggs, Osborne L. Griggs and Lois Christine Griggs, children of W. W. Griggs and his wife, Minnie Griggs, in equal portions, and that said farm shall be under the control and management of the said W. W. Griggs and wife, Minnie Griggs, who shall have full power to manage and control and use and enjoy all the revenues arising therefrom until the child Lois Christine Griggs shall become twenty-one years of age. That said will also provided that said testatrix desired that if at her death there should exist any just or lawful debts against her estate then she directed that same should be paid as soon as possible thereafter."

The petition stated that at the time of the death of Marilda Potts there were community debts aggregating substantially the amount shown above, and in addition named certain expenses for attorney's fees and probable cost of erecting a monument at the grave of Mrs. Potts. It was also alleged that the property located in the town of Florence "was the homestead of the plaintiff and his deceased wife at the time of her death, and at the time said will was probated was the homestead of the plaintiff, and is now the homestead of the plaintiff, and is therefore exempt from execution and forced sale under the Constitution and laws of this State."

It was further alleged that it was necessary to sell a part of the land described other than the homestead, which was and is the 158 acres involved in this foreclosure suit, in order to pay the community debts and other charges and expenses, for the reason that there was no other property on hand with which to pay same. It was stated that it was plaintiff's right and legal duty under the will "to sell sufficient of said land other than the homestead to pay said community debts and other charges and expenses." He also averred that the defendants and each of them were claiming and asserting some character of right, title, or interest in the land other than the homestead, and were denying the right, title and interest of the plaintiffs therein, and that defendants were asserting and claiming that the plaintiff had no right to sell said above described land other than said homestead to pay said debts, were therefore clouding the title of the plaintiff as executor under

said will, and denying his rights as executor under said will; that said claims and actions on the part of the defendants and each of them constituted a cloud on the title of the plaintiff and a cloud on his rights as executor, and that their actions and claims were making it impossible for him to sell a sufficient amount of said land to pay the debts of the estate.

Plaintiff likewise alleged that on account of the will of Mrs. Potts and on account of the will of the plaintiff himself made at the same time, it was necessary "that he have judgment of this court interpreting and construing said will and interpreting and construing his rights and duties thereunder."

The prayer, in part, reads as follows:

"Wherefore premises considered plaintiff prays that the defendants and each of them be cited to answer this petition * * * and that a guardian ad litem be appointed for the said above named minors and that he have judgment of the court adjudging and decreeing that he has the right to sell sufficient of said land to pay said community debts and to pay said other expenses hereinabove enumerated, including the expenses of this suit and expenses of the probating of his wife's will and of erecting the monument at his wife's grave, and that he have judgment of the court against said defendants and each of them quieting his title in said above named land, and that he have judgment of the court interpreting his rights and duties with reference to the matters hereinabove alleged as executor of said will, and also prays for general, special, legal and equitable relief," etc.

That the will of Mrs. Potts appointed Davis Potts independent executor, and that he qualified as such under the terms of said will, are not in issue in this case. In order to show the basis of the controversy, however, we quote the first and second paragraphs of the will of Marilda Potts:

"1. If at my death there should exist any just and lawful debts against me or my estate I desire and direct that same be paid as soon as possible thereafter.

"2. I give and bequeath to my beloved husband, Davis Potts, all of my property, both real and personal, or mixed, for the term of his natural life, and at his death, I desire and direct that all of my right, title and interest in and to the farm now owned and held by me and my said husband, situated in the County of Williamson and State of Texas, about three miles east of the town of Florence consisting of one hundred fifty-eight (158) acres shall pass to and be vested in Zelpha T. Griggs, Osborn L. Griggs and Lois Christine Griggs, in equal

portions and that said farm shall be in the control and management of the said W. W. Griggs and his wife, Minnie Griggs, who shall have full power to manage and control, and shall use and enjoy all the revenues arising therefrom, until the child, Lois Christine Griggs, arrives at the age of twenty-one years. As to the residue of the joint property of myself and husband, it is my will and desire that same shall descend to the natural heirs of my said husband at his death according to the laws of distribution and descent in this State."

Reference was made in the pleadings to an existing will of Davis Potts, which of course had not at that time been probated, since he was still alive. This will appointed Marilda Potts independent executrix thereof, and in so far as is necessary we will quote from that will. After directing that just debts be paid, the will of Davis Potts declared:

"I give and bequeath to my beloved wife, Marilda E. Potts, all of my property, both real and personal, or mixed, for the term of his natural life and at her death to the following named persons: to Zelpha Griggs, Osborn L. Griggs, and Lois Christine Griggs minor children of W. W. Griggs and Minnie Griggs, the farm situated in Williamson County, Texas, about three miles east of the town of Florence, consisting of one hundred and fifty-eight (158) acres, to each of said children an equal portion of said farm; to my brothers and sisters, who may survive me, and to the lawful heirs of those who may then be dead, all the residue of my property and estate, in equal moieties. It is my desire and wish and I direct that said W. W. Griggs and wife, Minnie Griggs, shall have control and management of the farm hereby bequeathed to their children above named and shall have full power and authority to manage and control same and use and enjoy the revenues and earnings thereof until the child, Lois C. Griggs, shall become twenty-one years old."

Copies of these two wills were attached to and made a part of the original petition filed by Davis Potts in the District Court.

All parties defendant in that suit, including the minors, devisees under the will, and their father and mother, W. W. Griggs and wife, appeared and answered. We will briefly state in substance the contents of their answer and the issues raised thereby. The defendants answered that the plaintiff Davis Potts and his deceased wife, Marilda Potts, did, as alleged in plaintiff's petition, execute the wills as alleged, and that said wills were joint and mutual; that under the terms of said wills the farm belonging to the community estate of the said Potts and wife, consisting of 158 acres of land, was given and be-

queathed in fee simple to said minor defendants; subject to the life estate given to the survivor of such community estate. That the second, third, fourth, and fifth tracts of land described in plaintiff's petition constituted said farm; that the will of Marilda Potts had been probated, and that the minor defendants were then the fee simple owners of said farm, subject only to the life estate of the plaintiff, Davis Potts, and subject to the payment of such community debts as might be charged against it after all other property of the community estate subject to the payment of debts had been applied thereto; that Davis Potts had attempted to sell a portion of said land and to defraud the minor defendants out of same, and that the defendants are entitled to have the two wills construed and adjudicated to be joint and mutual wills so as to protect the title of the minors to the land.

The defendants further stated that the bequest by which the fee simple title to the farm in controversy was willed to the minor defendants was a special bequest, while the terms of the bequest to the other property were general, and that therefore all of the property was bequeathed by the will except such as might be exempt to the survivor Davis Potts "should be applied to the payment of the community debts of said community estate before any property so specially bequeathed to said minor defendants should be so applied."

The defendants further denied that all the real property located in the town of Florence was a homestead, and by appropriate pleadings described a certain portion of it which they claimed was not a homestead, as against the insistence of Davis Potts that the whole was a homestead. That portion which they alleged was not a homestead they insisted was subject to be applied to the community debts of the deceased. They charged Davis Potts with having collected rents from the property which they said was not a homestead, and applying same to his own use, and asked that he be required to file with the court an account showing the amount of rents thus so collected and misapplied, and asked that the amount be applied to the community debts. They pleaded also that at the time of the death of Marilda Potts she and her husband, Davis Potts, were engaged in the grocery and restaurant business in the town of Florence, with a stock of goods and fixtures worth approximately $1,500. They charged that Davis Potts as executor had sold the goods and fixtures and had not applied the proceeds to the payment of community debts, and that they should be so applied. They also made other allegations with reference to

some building or construction in the town of Florence on land belonging to another, but which they said was the community property of Marilda and Davis Potts, and that this should be sold and applied to the community debts. They alleged that when Marilda Potts died the community estate had $61.66 in the bank, which they charged Davis Potts had converted and applied to his own use, instead of applying the same on the community debts. They also claimed that Davis Potts, in refusing to sell and apply the house and lot above described, and the stocks of goods and fixtures, cash, etc., had thereby allowed the interest to accumulate on the community debts, and that he should be charged personally therefor. That by reason of his acts in reducing the stock in value and appropriating the proceeds thereof to his own use, as well as by appropriating the bank deposit he had become personally liable to the community estate for the amounts thereof, which they estimated at about $500. They further averred that by reason of the facts therein stated Davis Potts, as executor of the estate, had mismanaged same by failing to promptly dispose of and apply on the debts owing by said estate the property which should have been first applied thereon, and they requested the court to appoint a receiver to sell such property, or such portion thereof as might be necessary to pay such debts and claims against the community estate as might be fixed and allowed by the court as proper claims against the community estate, such property to be sold in such order as should be fixed and ordered by the judgment of the court. The prayer in the answer read as follows:

"WHEREFORE, these defendants pray that the said wills of Davis Potts and Marilda Potts be declared joint and mutual wills and that the farm therein mentioned being the second, third, fourth and fifth tracts of land described in plaintiff's petition be adjudged and declared to be the property of said minor defendants subject only to the life estate of the plaintiff; that the court adjudicate and determine what debts are properly chargeable against said community estate of the plaintiff, and Marilda Potts, and establish the amounts of such debts; that the judgment be entered requiring that the lot of land described in paragraph 5 of this answer, the stock of goods and fixtures belonging to said community estate, the shed or addition to the Brizendine house, and any and all other community property which is not exempt from sale under the laws of this State be first sold and applied on said indebtedness before any of said farm is sold; that the court determine and enter judgment as-

certaining and fixing the amount of interest the plaintiff has allowed to accumulate on the indebtedness due by said community estate, which should have been stopped by applying at the proper time to the payment of said debts, the proceeds of said house and lot, stock, fixtures, shed, and bank deposit on said debts, and that such amount be adjudged against the plaintiff; that it be adjudicated and determined as to what amount the plaintiff has allowed said stock of goods to be reduced in value, and that said amount be adjudged against the plaintiff and that plaintiff's life estate in said farm be ordered sold to raise such amounts to be applied upon said community indebtedness before any portion of said farm is sold; that if any portion of said farm is adjudged to be sold that a receiver be appointed to make such sale and to apply the proceeds thereof to the payment of said community debts; and that such receiver also be directed to sell all the other property belonging to said community estate and which is subject to the payment of such community debts as determined by the court, and that such receiver sell plaintiff's life estate in said farm to raise such amount as the plaintiff is personally found to be liable for, before selling any portion of the fee simple title to said farm; that if the court holds that it has no authority to appoint a receiver to make such sale, and that the plaintiff as executor has the right to make such sales, then that such sales be made by the plaintiff in the order above mentioned, and that all such sales be subject to the approval of this court; that defendants have judgment against plaintiff for all costs in this behalf expended and for all other relief both general and special to which they may be entitled and will ever pray."

It will be observed that the defendants averred that the wills of Davis Potts and his wife, Marilda, were mutual wills. The legal effect of the wills, if in fact mutual, was to place the whole title and fee to the 158 acres of land involved in this suit in the minor defendants, with the right of control, etc., in their parents, subject, of course, to the life estate of Davis Potts. On the other hand, if the wills were not in fact mutual, their effect would have been to place the title and fee to only one-half of the 158 acres in the minor defendants, subject to the right of Davis Potts to change his will and deprive the minor defendants of that which they would receive should the will remain unchanged. The question, therefore, as the mutuality of the wills was a vital and controversial one between the parties. The testimony of counsel for Davis Potts in the instant case shows that he went to the attorney for the defend-

ants and told him that in his opinion the will was not a mutual one; that he had talked with a Mr. Brewster, who wrote the will, and that in his opinion the testimony of Brewster would not make it a mutual will, and that Davis Potts was going to make a new will and destroy the old one previously executed by him, and that under the terms of the will as construed by counsel, the minor defendants could only get one-half of the estate, and that charged with the community debts; which, by the time they had paid the debts and divided the other half, would leave them practically nothing. The testimony of counsel who at the time represented defendants, including the minor defendants, shows the controversy was existing between the parties as to whether or not the wills were mutual and as to whether or not Davis Potts might change his will, and by such change deprive the defendants of the one-half interest in the 158 acres of land. Counsel for the minor defendants in the original litigation in Cause No. 8513 in part testified:

"In our investigation we considered it very doubtful indeed that we could hold Potts' half interest in the land for the children, because if the wills were not mutual, Potts could sell his half interest or make another will, and the only part that would be left would be the half interest under the Mrs. Potts' will.

"We alleged in our answer that the will of Mrs. Potts, which had been probated, and the will of Mr. Potts, which of course had not been probated, but had been written at the same time, were mutual wills, and in order that the jury may understand the purpose of that allegation, if they had been mutual wills that would have tied it so that Potts could not have made another will, it would have tied his half of the property the same as Mrs. Potts', under the terms of the will. We made that allegation but upon investigation we could find no proof that one was made in consideration of the other being made. We had the statement of Mr. Brewster who had drawn them that they had been signed the same day, but so far as he knew there was no agreement that one was made in consideration of the other being made, and the only proof we had or could get that they were mutual wills was that they had the same provisions in them, which, under our understanding of the law, did not make them mutual wills."

It is thus seen that in the initial suit between Davis Potts on the one hand and Griggs and his wife and their children, legatees in remainder on the other, there were serious questions in controversy. Among the things to be determined was whether or not by the probation of Marilda Potts' will, actual

title in fee passed out of Davis Potts into the minor defendants. If it did, it was by virtue of the mutuality of the wills, and of course Potts had only his life interest in the property. On the other hand, if the wills were not mutual wills, then title to a half interest in the 158 acres had not passed out of Davis Potts, but was still in him to do with as he might thereafter desire. The controversy embraced a serious question as to what constituted the homestead of Davis Potts, and therefore as to what property was subject to sale in payment of the community debts of Marilda Potts and her husband. In addition, the litigation was made to embrace the liability of Davis Potts for the alleged conversion of various items of community property and, as shown, prayer was made for the removal of Davis Potts as independent executor. During the pendency of this litigation, however, the parties compromised the same and an agreed judgment was entered upon hearing, embracing the introduction of testimony, by which the district court approved the compromise and entered a decree in accordance therewith. The judgment containing a copy of the agreement was introduced in evidence, and shows that the amount of debts of the community estate, including necessary attorney's fees incurred by Davis Potts, and the erection of a suitable monument at the grave of Marilda Potts aggregated the sum $2,530. By the agreement and the judgment the property claimed as homestead was awarded to Davis Potts in fee simple. By this award and decree the defendants in error lost their claim that any portion of this property was not homestead and should be subjected to the payment of community debts. The 158 acres of land, however, involved in this controversy were set aside in fee simple to the minor defendants, charged with a lien for some $3,000 and interest and attorney's fees. Under the agreement and the decree Davis Potts surrendered his claim in fee to one-half of the property and his life estate in the whole, and it was made subject to the management and control of W. W. Griggs and Minnie Griggs, the father and mother of the minor defendants, who were given the use of the property and its revenues and earnings until the minor Lois Christine Griggs should become 21 years of age, as provided for in the wills. In other words, the decree recognized the wills as joint wills, but went further, and took from Davis Potts his life estate, and immediately delivered the possession of the property to the minor defendants under the control of Griggs and his wife, with the right on their part to immediately enjoy the rents and revenues thereof. The property was to be charged with the debts specified, and Griggs and wife

were to immediately control, manage, and enjoy the rents and revenues therefrom. A man by the name of Keller was appointed receiver of this property for the purpose of negotiating a loan against the same in order to liquidate the community debts; the balance above the liquidation of the community debts was to be paid to Davis Potts, who in turn was to have a monument erected at the grave of Marilda Potts out of the funds received by him from the loan. It was further agreed and decreed by the court that the live stock on the land was to be set aside to the defendants, and such amount as Griggs claimed that Davis Potts owed him was to be cancelled. Griggs and wife, who under the decree were to have the rents and revenues of the land awarded to the minor defendants, were made personally liable for the payment of the interest on the note executed for the $3,000.

The district court, in that suit, was called upon to ascertain the title as between Davis Potts on the one side, and the minor defendants on the other, to one-half of the 158 acres of land, as well as the question of actual title to certain property claimed as Davis Potts' homestead. The court was called upon not only to construe the will, but also to determine whether or not Davis Potts had become personally liable for certain alleged conversion of community property, the benefit of which it was claimed the minor defendants were entitled to. The judgment of the court settled these and other matters. The removal of Davis Potts as independent executor was not granted, and he was permitted to continue as such, and was to erect a monument at his wife's grave out of the funds to be obtained out of the loan which has been described.

Thus it will be seen that there were many vital issues in controversy between Davis Potts and the devisees under the will of Mrs. Potts. Among others, they disagreed upon the following issues: (1) As to the meaning of the will of Mrs. Potts; (2) as to what part of the estate could be claimed by Davis Potts as a homestead; (3) whether or not the wills executed by Mrs. Potts and Davis Potts were mutual wills; (4) what portion of the property should be applied to the payment of community debts before any property specially devised to the minors should be so applied. In addition to the foregoing matters, the defendants charged that Davis Potts was acting dishonestly in converting to his own use certain property not belonging to him under the terms of the will. They also asked that during the pendency of the suit a receiver be appointed to take charge of the property and protect it.

■ Plaintiffs in error vigorously contend that the district court did not have jurisdiction of the matters raised in cause No. 8513. The Constitution and statutes of this State confer upon the district court broad equitable powers. Constitution, art. V, sec. 8; Articles 1907 and 3291, R. S., 1925.

It has long been the established rule in this State that when questions of title are involved, where the case brings in question the construction of a will, as was done in that case, the district court is a proper tribunal in which to adjudicate such questions. Little v. Birdwell, 21 Texas, 597; Key v. Key (Civ. App.), 167 S. W. 173 (writ denied). Likewise, the rule has been announced that the district court has jurisdiction of a suit brought against an independent executor for the recovery of property, both real and personal, alleged to belong to an estate and withheld from the assets of the estate under the claim that it belonged to him, and determine in whom the equitable title to such property was, and to decree a partition thereof, as well as the other property of the estate, among those entitled thereto. Japhet v. Pullen (Civ. App.), 133 S. W., 441 (writ denied); Cox v. Cox, 77 Texas, 587; Bente v. Sullivan (Civ. App.), 115 S. W., 354 (writ denied); Wiseman v. Swain, 114 S. W., 148, Id. (Fidelity & Deposit Co. of Md. v. Wiseman), 103 Texas, 286, 124 S. W., 621; Wadsworth v. Chick, 55 Texas, 241.

■■ The provisions of the Constitution confer upon the district court equity jurisdiction in as broad terms as is conferred probate jurisdiction on the county court. When it appears by the pleadings and the proof that the suit involves controversies and issues between the parties for which the probate jurisdiction of the county court is inadequate to grant the relief sought, then the district court has jurisdiction, and may grant the necessary relief. Gregory v. Ward, 118 Texas, 526, 18 S. W. (2d) 1049; Lauraine v. Ashe, 109 Texas, 69, 191 S. W., 563, 196 S. W., 501. The district court, having properly assumed jurisdiction to construe the will of Mrs. Potts and adjudicate the issues raised by the pleadings and the evidence, had the power to appoint a receiver for the preservation of the property involved. This power was inherent in the court, and was incident to the exercise of its jurisdiction until the case was finally determined. R. S., art. 2293; Lauraine v. Ashe, *supra;* Richardson v. McCloskey (Civ. App.), 228 S. W., 323, 53 C. J., p. 42, sec. 29, and authorities cited in Note 37.

The judgment entered in cause 8513 was by agreement of all the parties. No appeal was taken therefrom, and the judgment became final. It is sought to void the effect of that

judgment on the ground that the district court did not acquire jurisdiction of the matters adjudicated therein.

■ The insistence is made that while the District Court may have had jurisdiction of the controversy, it was without power to direct the execution of the judgment, which it is stated should have been certified to the Probate Court for observance. The Probate Court had no jurisdiction of any of the issues involved. There was no guardianship of the minor defendants pending, and the Probate Court had no jurisdiction of the controversies between the independent executor and the devisees under the will. It must be borne in mind that Davis Potts was an independent executor, and as such could himself do whatever a Probate Court in an ordinary case could do if the estate was being administered through the Probate Court. Roy v. Whitaker, 92 Texas, 346, 355; McLane v. Belvin, 47 Texas, 493; McDonald v. Hamblen, 78 Texas, 633; Howard v. Johnson, 69 Texas, 655; Lumpkin v. Smith, 62 Texas, 249; Callaghan v. Grenet, 66 Texas, 236; Stevenson v. Roberts, 64 S. W., 235; Altgelt v. Alamo Natl. Bank, 79 S. W., 582; Altgelt v. Oliver Bros., 86 S. W., 29; Parks v. Knox (Civ. App.), 130 S. W., 203; Beckham v. Beckham (Civ. App.), 202 S. W., 517; Schramm v. Hoch (Civ. App.), 241 S. W., 1087; Holmes v. Johns, 56 Texas, 41; Roberts v. Connellee, 71 Texas, 11. It may also be said that in a case of this character the Probate Court had no jurisdiction to pass on the claims of creditors against the estate. That power was confided to the independent executor. McLane v. Belvin, 47 Texas, 493, and authorities supra. What the District Court actually did was to exercise a power conferred upon it to construe the will, to determine the issues between Davis Potts and the plaintiffs in error as to the actual ownership of the land, homestead claim, etc., and to appoint a receiver, and for that receiver to do those very things which Davis Potts was authorized to do without the aid or interference of the Probate Court. That the District Court had authority to do this we do not think debatable.

The cases cited by the plaintiffs are not in point. The District Court did not divest the title of the minors to any property. It ascertained their rights, and confirmed them, subject to debts as determined by the court.

The case of Lauraine v. Ashe, 109 Texas, 69, 191 S. W., 563, is not in point. What was there said was with reference to an ordinary administration, not to one independent of the Probate Court, where power is conferred upon the independent executor to ascertain and pay debts.

The case of Messner v. Giddings, 65 Texas, 301, has no application. The minor defendants were not parties to the action by which title was divested out of them.

The case of Allen v. Von Rosenberg, 16 S. W., 1096, was by the old Commission of Appeals. It is unnecessary to discuss the case. The original opinion as filed by the court is before us, and it is marked "Not to be reported"; and the case was not reported in the Texas Reports. Evidently it was never intended that the opinion should serve as a guide in future litigation, but only to dispose of the particular case before the court.

The District Court unquestionably had jurisdiction of the matters involved in the suit in issue, and had the authority to appoint a receiver and to make proper and final disposition of the issues raised. What was done by virtue of that judgment was binding upon all the parties thereto.

The Court of Civil Appeals made a correct disposition of this case, and the judgments of the trial court and Court of Civil Appeals are accordingly affirmed.