## WINSTON et al. v. GRIFFITH.
### No. 13560.

Court of Civil Appeals of Texas. Fort Worth.

June 11, 1937.

Rehearing Denied July 9, 1937.

Boykin, Ray & Shirley and H. C. Ray, all of Fort Worth, for appellants.

Clyde R. Davis and Fred S. Dudley, both of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

This suit involves the construction of the following instrument:

"Joint Last Will and Testament of C. E. Puryear and Mary Lee Puryear.

"State of Texas, County of Tarrant.

"Know all men by these presents, that we, C. E. Puryear and Mary Lee Puryear, husband and wife, being of sound and disposing mind and memory do make and publish this our joint last will and testament.

"First: We direct that all our just debts shall be paid, and that the legacies hereinafter given shall, after the payments of our debts, be paid out of our estates.

"Second: I, C. E. Puryear, bequeath all my property, both real and person, to my beloved wife, Mary Lee Puryear, in the event I should precede her to that great beyond. I direct that she shall in this event be the sole executrix without bond.

"In the event that my wife, Mary Lee Puryear, should go before I do, I direct that my half of the real and personal property go equally to my sisters, Mrs Edd Bomar of Wartrace, Tennessee, and my brother, W. H. Puryear, also of Wartrace, Tennessee. I also direct that in this event that my nephew, Allen Bomar, of Wartrace, Tennessee, be the sole executor without bond.

"Third: I, Mary Lee Puryear, give and bequeath all of my real and person property to my beloved husband, C. E. Puryear, in the event that I should pass away before he goes. I direct that he shall be the sole executor of the estate without bond.

"In the event that my husband, C. E. Puryear, should pass away before myself, I direct that all my half of the estate shall be divided as follows:

"To my sister, Ada Winston, I give and bequeath One Dollar ($1.00) in money.

"To my nephews, Percy E. Winston, Rensom Winston, Reginald Barnes, Bill Barnes, Joe Barnes and Cottle Barnes; and my nieces, Octave Winston and Catherine Barnes, I give and bequeath the remainder of my half of the estate, each of whom shall share and share alike.

"The foregoing instrument, written in our presence according to our dictations, we make and publish as our joint last will, hereunto subscribed our names this 5 day of May, A. D. 1935.

"C. E. Puryear,
"Husband.

"Mary Lee Puryear,
"Wife."

Mrs. Mary Lee Puryear died in the city of Fort Worth on the 15th day of November, 1935, six months and ten days after the date of the will, and on the day following C. E. Puryear also departed this life.

On December 2, 1935, the instrument was admitted to probate as the last will and testament of C. E. Puryear and Mary Lee Puryear, and John C. Griffith was duly appointed administrator, with the will annexed, of the estate of C. E. Puryear, deceased.

At the time of their deaths, lot 13, in block 13, of South Hemphill Heights addition to the city of Fort Worth, was the homestead of the two testators, although the legal title thereto was in the name of C. E. Puryear. Title to another lot in the city of Fort Worth also stood in the name of C. E. Puryear, subject to an encumbrance for purchase money. The administrator took charge of that property and also of certain personal property as assets of the estate of C. E. Puryear, and his administration of the same was subject to the orders of the county court, in which he was appointed. Certain claims against the estate have been allowed by him and approved by the court. He has on hand more than sufficient to pay off all indebtedness against the estate and is ready to close the administration. But being in doubt as to the proper construction of the will, he instituted this suit in the district court of Tarrant county for a decree construing the will of C. E. Puryear and designating how the real estate should be distributed.

The following were named as parties defendant in the petition: Mrs. Ed Bomar, named in the instrument as the sister of C. E. Puryear; W. H. Puryear, named as his brother; Percy E. Winston, Ransom Winston, Reginald Barnes, Bill Barnes, Joe Barnes, and Cottle Barnes, named in the instrument as nephews of Mrs. Mary Lee Puryear; and Octave Winston and Catherine Barnes, named as her nieces.

W. H. Puryear and Mrs. Ed Bomar filed an answer to the suit and adopted the allegations in plaintiff's petition and claimed an undivided half interest in and to the two lots in Fort Worth as sole devisees of C. E. Puryear, deceased. The answer also included a cross action against the nieces and nephews of Mrs. Mary Lee Puryear named in her will.

The nieces and nephews of Mrs. Mary Lee Puryear filed in the county court in the administration proceedings their plea of intervention, asserting their claim of an undivided one-half interest in the estate of C. E. Puryear, deceased, and especially the two lots in Fort Worth, under and by virtue of the provisions of the will of Mrs. Mary Lee Puryear. The county court overruled a challenge of its jurisdiction to determine the merits of that claim. In this suit, thereafter instituted in the district court, the same claimants challenged the jurisdiction of the district court to determine the conflicting claims of title to the realty between them and the brother and sister of C. E. Puryear, named in the second paragraph of his wife. The district court held it had exclusive jurisdiction of those claims and enjoined those claimants from further prosecution of their claim of title in the county court.

Subject to their exception to that ruling, those claimants filed their plea of intervention in the district court, asserting the same claim of title as theretofore urged in the county court. Their claim of title was based upon the contention that the instrument, construed as a whole, showed an intention and will of both testators that upon the death of both, Mrs. Mary Lee Puryear's community half of the property should descend to her nieces and nephews named in her will; further, that if mistaken in that construction, the instrument was ambiguous, at all events, and should be construed as vesting the same interest in them by reason of declarations to that effect made at the time of its execution to the scrivener who prepared the instrument and those who witnessed it.

Upon trial of the case without a jury the court excluded the testimony of the witnesses just mentioned in accord with that pleading and rendered judgment in favor of the devisees of C. E. Puryear for full title to the two lots in the city of Fort Worth in controversy as against the nieces and nephews of Mrs. Mary Lee Puryear, named in

the third paragraph of the joint will. The judgment recites findings that the will was unambiguous; that all the interest of Mrs. Mary Lee Puryear passed to her husband, C. E. Puryeár; and that the devisees named in his will were his only heirs. The judgment implies that those devisees took an undivided one-half interest in the property under the terms of C. E. Puryear's will and the remaining one-half not disposed of by the will, by inheritance under the statute of descent and distribution.

We believe it well settled that the district court had exclusive jurisdiction of the conflicting claims to the two lots in controversy. 13 Tex.Jur. p. 611, § 28; Berry v. Barnes (Tex.Civ.App.) 26 S.W.(2d) 657; Johnson v. Hampton (Tex.Civ.App.) 297 S.W. 891; Cox v. Cox, 77 Tex. 587, 14 S.W. 201; Wadsworth v. Chick, 55 Tex. 241; Little v. Birdwell, 21 Tex. 597, 73 Am.Dec. 242; Johnson v. First National Bank (Tex. Civ.App.) 198 S.W. 990; Key v. Key (Tex. Civ.App.) 167 S.W. 173; Branch v. Hanrick, 70 Tex. 731, 8 S.W. 539; State Nat. Bank v. Trevino (Tex.Civ.App.) 215 S.W. 989; O'Neil v. Norton (Tex.Com.App.) 29 S.W.(2d) 1060; Gregory v. Ward, 118 Tex. 526, 18 S.W.(2d) 1049; Cantrell v. Brannon (Tex.Civ.App.) 16 S.W.(2d) 400; Ford v. Wheat (Tex.Com.App.) 36 S.W.(2d) 712; Hein v. DeBusk (Tex. Com.App.) 277 S.W. 1053; Cogley v. Welch (Tex.Com.App.) 34 S.W.(2d) 849; Griggs v. Brewster, 122 Tex. 588, 62 S.W.(2d) 980; Johnson v. Coit (Tex. Civ.App.) 48 S.W.(2d) 397; Mayo v. Tudor's Heirs, 74 Tex. 471, 12 S.W. 117; articles 6082, 6083, Rev.Civ.Stat.; Schelb v. Sparenberg (Tex.Civ.App.) 89 S.W.(2d) 1062. And since the order of the county court assuming jurisdiction of that controversy was a nullity, it was not incumbent upon the appellee to appeal therefrom in order to confer jurisdiction on the district court.

The proper construction of the joint will is the issue to be determined here.

The instrument consists of two separate wills, one by the husband and the other by the wife, and we shall refer to them as such.

Article 1291, Vernon's Tex.Ann.Civ.Stat., reads: "Every estate in lands which shall thereafter (hereafter) be granted, conveyed or devised to one although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

The following rule of construction of wills announced by Justice Stayton in McMurry v. Stanley, 69 Tex. 227, 6 S.W. 412, 413, has been followed in numerous later decisions:

"In construing the will, all its provisions should be looked to, for the purpose of ascertaining what the real intention of the testatrix was; and, if this can be ascertained from the language of the instrument, then any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument."

It was quoted with approval in the opinion of Chief Justice Gaines in Dulin v. Moore, 96 Tex. 135, 70 S.W. 742; followed also by the Commission of Appeals in Gilliam v. Mahon, 231 S.W. 712, 713, in which this was said:

"The rule referred to can be correctly and more fully phrased as follows:

"'Where the first clause of a will in clear, unambiguous language gives and bequeaths to one devisee all the property real and personal of which the testator dies possessed, such estate so given cannot be disturbed, cut down, or diminished by a subsequent clause, which is uncertain and ambiguous in its meaning.'

"That rule of law has been long established and applied. Careful examination of the cases of McMurry v. Stanley, 69 Tex. 227, 6 S.W. 412, and Dulin v. Moore, 96 Tex. 135, 70 S.W. 742, which are strongly relied upon by defendants in error, reveals that the clause of the will in each case which was held to limit the devisees was clear, direct, and unambiguous, and left no doubt as to the intention and desire of the testator, which was, under the terms of the instrument, capable of being practically carried out.

"Such is the nature and effect of the first clause of the will of S. A. Mahon, which, in clear and unambiguous terms, vested an estate in fee in his wife in all his property. The clause referring to the granddaughter is secondary only. Were it as clear as the first it would be our duty to reconcile the two, but in view of its ambiguous character the primary clause cannot be affected by it."

In Gay v. City of Fort Worth (Tex.Civ. App.) 4 S.W.(2d) 268, 272 (writ of error

dismissed), in an exhaustive discussion of the rule of construction of wills, Chief Justice Conner quoted and followed the above excerpt from Gilliam v. Mahon, and also said:

"The general rule is well stated in 28 Ruling Case Law, Wills, § 206, as follows:

" 'But an express bequest or devise cannot be cut down by a subsequent clause of doubtful meaning and an estate granted in plain and unequivocal language in one clause of a will therefore cannot be lessened or cut down by a subsequent clause, unless the language therein is as clear, plain and unequivocal as that in the first grant.'

"In 40 Cyc, Wills, pp. 14, 15, 16, the author says:

" 'But a clearly expressed intention in one part of the will cannot be controlled by a doubtful construction in another part. Thus a clear gift in one clause cannot be taken away or cut down by doubtful expressions in another clause, but only by expressed words or by clear implication and a repugnant restriction or remainder after an absolute gift may be held void.'

"In Shouler, Wills (6th Ed.) 1926, Supp. par. 900, the following is said:

" 'And in carrying out the intent of the testator, the general rule is that when an interest is clearly and expressly given in one clause of a will, the devise or bequest will not be deemed taken away or diminished by subsequent words unless they are equally clear and decisive of the testator's intention. The theory is that where a testator positively makes a certain devise or bequest there can be no intent in his mind to take it away or cut it down.'

"And again in paragraph 1188:

" 'The general rule is that, where a testator positively makes a certain devise or bequest, the devise or bequest will not be deemed limited or diminished by subsequent words unless they are equally clear and decisive. * * * It follows that where there is an unqualified devise of real property by language sufficient to pass the fee in the property, interest of the devisee or devisees will not be deemed to be cut down by a subsequent clause in the will into an inferior estate unless the subsequent clause is creating· the fee in the first instance. Ambiguous words or doubtful expressions will not be held to diminish a fee estate unequivocally created in a previous clause in a will.' "

■ The will of Mrs. Puryear devised her entire estate to her husband in clear and unambiguous terms if she should die first, with no possible interest to her nieces in that event. The devise by C. E. Puryear, of his half of the property to his brother and sister was likewise clear and unambiguous. The other half of the estate which, at the time of his death, he had acquired through the will of his wife, was left undisposed of and therefore passed to his brother and sister by the statutes of inheritance. The failure to dispose of it did not in any manner qualify or lessen the half so devised. Heidenheimer v. Bauman, 84 Tex. 174, 19 S.W. 382, 31 Am.St.Rep. 29.

This is said in appellants' brief: "While the will .may be awkwardly drawn yet one cannot read the entire document without being impelled to the conclusion that both Mr. and Mrs. Puryear intended by this will that the property remaining after the death of both of them should be equally divided one-half to Mr. Puryear's people and the other one-half to Mrs. Puryear's people named in the will. Otherwise, there could be no possible reason for them to speak of 'my half' and to name the beneficiaries therein."

We believe that contention is without merit. The adoption of that interpretation, manifestly, would violate the rule of construction announced in the authorities cited above, since it would diminish and cut down the estate expressly and unequivocally devised to others and that, too, by terms and inferences of uncertain and doubtful character. The presumption that a testator intended to dispose of his whole estate, in the absence of a showing to the contrary [Bittner v. Bittner (Tex.Com.App.) 45 S. W.(2d) 148], has no proper application here, since there is no ambiguity in either will.

■ Over appellees' objections the following testimony was introduced by appellants:

Elden B. Busby, a friend of the Puryears, testified that C. E. Puryear requested witness to write a will for him.

"Q. What did you say to him? Just tell the conversation that took place there. A. I asked him if he knew what' he wanted to put in it at that time. He said he did. I told him that I wasn't a lawyer, but I would attempt .as best I could to put into words what he wanted said, and he had with him at that time the names of the beneficiaries

that he and Mrs. Puryear wanted put into that will.

"Q. What kind of will did he say he wanted drawn? A. He said he wanted a joint will. I asked him if he did not think it would be better to make two separate wills, and he said no, that they had agreed that they wanted a joint will.

"Q. By 'they' you mean who? A. He and Mrs. Puryear, and he proceeded thus, I will say: First, that upon his death he wanted his half to go to his wife, Mrs. Puryear, and that upon her death, then her half should go to her heirs, the beneficiaries who were named, and then in case he died first, his half should go to her. Now, let me see.

"Q. Just state that again. A. Let me start over on that. I was informed in case Mr. Puryear died first, his half should go to Mrs. Puryear, and upon her death his half should go to his heirs, and her half to her heirs, as named in the will. And then likewise, if the other one died first, that if Mrs. Puryear died first, her half should go to him, and upon his death, it would be divided his half to his heirs and her half to hers.

"Q. Did he say anything about what was to take place after they both died. A. I don't remember."

R. E. Squires, one of the witnesses to the will, testified as follows:

"Q. What did they say to you about the will? A. Mr. Puryear handed me the will and I began to read it over. I had only gotten part way down when he began to explain to me that he, if he died first, he was willing to her. If she died first, she was willing to him, and when they had taken care of everything, then half of the estate was to go to his people, who are named in the will and her half was to go to her people as named in the will, and then we signed it.

"Q. Was Mrs. Puryear present then, and was that in her presence. A. Mrs. Puryear was in bed, and we stepped into the next room where there was a desk, and we signed it in the next room.

"Q. Did Mrs. Puryear say anything about the will at that time? A. When we came back after we had signed it, and she was looking it over, she said, and I think these are just the words that she used, she says, 'Ralph, don't you think that is fair?' And I said, 'Fair, what do you mean?' Well, when everything is through with, half

should go to his people, and half should go to her people, and I said 'certainly.' Mr. Puryear stood right there beside the bed, and he said, 'of course, it is fair.'

"Now, as I remember it, those are the exact words that we three used. * * *

"Q. Did Mrs. Puryear read the will in your presence? A. No.

"Q. Did Mr. Puryear read it in your presence? A. No, it was not read by either party. I started to read it, and I never finished it. Because of his explanation, we put our names down."

Although admitted tentatively, that testimony was given no effect because of the conclusions reached that there was no ambiguity in the wills, and we concur in that conclusion. The wife having died first, all of her property, both real and personal, passed to her husband unconditionally under the very terms of her will, leaving nothing to her named nieces and nephews. The will of the husband likewise in plain and specific terms devised one-half of his estate to his brother and sister named in the instrument. Hence the court did not err in refusing to give effect to the parol testimony noted.

In Heidenheimer v. Bauman, 84 Tex. 174, 19 S.W. 382, 384, 31 Am.St.Rep. 29, in opinion by Chief Justice Stayton, it is said:

"Parol testimony is admissible often to enable a court to give effect to an intention expressed in a will, but it is unnecessary in this case to enumerate the purposes for which such evidence may be received, for such evidence is never admissible for the purpose of showing a testator's intention by proof of his oral declarations of intent either as to the persons who shall take his estate or as to what particular part of his estate any one person was intended to receive. The existence of such a statute as that in force in this state ought to be deemed a sufficient answer to a proposition that such evidence as was admitted in this cause ought to be admitted for the purpose of showing who the testator intended should be the recipients of his bounty; for there are no parts of a testamentary paper more important elements in its validity than those which name the beneficiaries and declare what part of the testator's estate each shall receive. While the language of the statute prescribing the requisites to a will is affirmative, it as fully denies testamentary effect to parol declarations as would it if it expressly declared that no testamen-

tary disposition of property should be made in manner other than that prescribed. The reasons on which the requirements of the statute are based have been too often stated to require repetition, are founded on sound public policy, and require the rejection of such evidence as was received in this case. Whart. on Ev. 992, 994; Abbott's Tr. Ev., 84; Wig. Wills, 10-13; [1 Greenl. Ev., 289–291;] 1 Redf. Wills, 496–508; 1 Jarm. on Wills, 409, 413; Schouler, Wills, 567–569. * * *

"In the absence of a valid testamentary disposition by the testator of any part of his estate, such estate vested in his heir at law."

Appellants insist further that the testimony noted showed a parol agreement between the husband and wife that upon the death of both the property remaining should be divided equally between the named devisees of each; and therefore a trust in favor of appellants as the named heirs of Mrs. Puryear for an undivided half of the property left by C. E. Puryear at the time of his death. It is further contended that under that testimony the joint will should be so reformed as to decree to appellants one-half of the property in controversy. Several decisions are cited, such as Wagnon v. Wagnon (Austin Civ.App.) 16 S.W.(2d) 366; Jordan v. Abney, 97 Tex. 296, 78 S.W. 486; Larrabee v. Porter (Austin Civ.App.) 166 S.W. 395.

None of the authorities cited are in point here because of differences in the facts involved. We deem it sufficient to say that to sustain either contention would be to violate the settled rule that unambiguous terms of a will cannot be changed or added to by parol testimony, and also the settled rule of construction of wills announced in the authorities we have discussed. Hence those contentions are without merit.

All assignments of error are overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

The statement in our former opinion that Joe Barnes was named as one of the defendants in plaintiffs' petition was incorrect, and it is withdrawn.

Through oversight we failed to discuss one of appellants' assignments of error challenging the jurisdiction of this court to determine the merits of the issues presented on this appeal for lack of a necessary party in the person of Joe Barnes, one of the named legatees in the will of Mrs. Mary Lee Puryear. Appellants did not challenge the jurisdiction of the trial court on that ground, but urge the objection in this court for the first time as presenting fundamental error.

Appellants invoke the general rule that in suits for title to real estate all parties adversely interested are necessary parties; and the failure to make them parties is fundamental error, of which this court may take judicial notice.

This proceeding by the administrator to construe the will of Mrs. C. E. Puryear was in the nature of a proceeding in rem. 26 Tex.Jur. § 566, p. 412. Under the terms of Mrs. Puryear's will, all her nephews and nieces named as her legatees were to share equally and were members of the same class. The interests of those legatees were not hostile one to another, but all stood on the same footing, and a judgment in favor of the interveners necessarily would have been equally as beneficial to Joe Barnes though not nominally a party to the proceeding. Likewise, under the doctrine of virtual representation, he would be bound by any judgment rendered against interveners who asserted the rights of the entire class, of which he was a member. 26 Tex.Jur. § 459, p. 229; Seiter v. Marschall, 105 Tex. 205, 147 S.W. 226.

Decisions cited by appellants, such as, Goldsmith v. Mitchell (Tex.Civ.App.) 57 S.W.(2d) 188; Barmore v. Darragh (Tex. Civ.App.) 227 S.W. 522; Sharpe v. Land Owners Oil Ass'n, 127 Tex. 147, 92 S.W. (2d) 435; and Panhandle Const. Co. v. Casey, (Tex.Civ.App.) 66 S.W.(2d) 705, follow the general rule that in suits involving title to property all persons having an interest therein are necessary parties. But those suits were not instituted by a member of a class of claimants for the benefit of all or in the interest of all, alike, and therefore those decisions are not in point here. In fact, it appeared that the claims of the plaintiffs in those cases were adverse to the interests of others who were not made defendants.

The assignment of error now under discussion is without merit.

Appellants' motion for rehearing is overruled, but without prejudice to their right to file a further motion for rehearing by reason of our conclusions on the assignment of error shown above and not discussed in our original opinion.