SMITH *v.* THOMPSON.

1. WILLS—HUSBAND AND WIFE—CONTRACTS—CONSIDERATION.
   Under mutual agreement by husband and wife to make identical wills and provide therein for certain relatives of each, the undertaking of each to perform was sufficient consideration for the promise of the other.

2. SAME—ORAL AGREEMENT TO MAKE WILL ENFORCEABLE.
   That mutual agreement by husband and wife to make identical wills and provide therein for certain relatives of each was oral does not affect its enforcement.

3. SAME—MUTUAL AGREEMENT TO MAKE WILL IRREVOCABLE AFTER DEATH OF OTHER SPOUSE—FRAUD.
   Where husband and wife entered into mutual agreement to make identical wills and provide therein for certain relatives of each, and husband continued to rely thereon and at his death his wife took under his will and received benefit of said agreement, she was irrevocably bound thereby; breach by her after his death amounting to fraud upon husband.

4. SAME—SPECIFIC PERFORMANCE OF AGREEMENT TO MAKE WILL—PARTIES.
   Mutual agreement between husband and wife to make identical wills and provide therein for certain relatives of each is enforceable in equity by husband's relatives so provided for against estate of wife, who changed her will after her husband's death, although said relatives were not present when agreement was made; overruling *Modern Maccabees* v. *Sharp*, 163 Mich. 449.

Appeal from Wayne; Webster (Arthur), J. Submitted January 10, 1930. (Docket No. 57, Calendar No. 34,749.) Decided April 7, 1930. Rehearing denied June 2, 1930.

Bill by Sarah E. Smith and others against Harry F. Thompson and others for specific performance

As to validity of agreement for joint, mutual or reciprocal wills, see annotation in 2 A. L. R. 1200; 33 A. L. R. 741.

of an oral contract to make identical wills. From a decree for plaintiffs, defendant James Frederick Smith appeals. Affirmed.

*Lightner, Oxtoby, Hanley & Crawford* and *Charles R. Thompson,* for appellant.

*Lodge & Brown,* for appellees.

SHARPE, J.  James W. Smith and Hattie Smith, his wife, each made a will on March 2, 1926. In his will he left his entire estate to his wife. He also provided that, in case she should predecease him, one-third of his estate should pass in equal shares to his mother and his three sisters, naming them, and to the two sisters and a niece of his wife, naming them. Hattie Smith, the wife, in her will left her entire estate to her husband. Then followed the same provisions as in his will for the distribution of one-third of her estate in the event that her husband predeceased her.

James W. Smith died at the city of Detroit on October 17, 1926. He left an estate said to be of the value of about $1,000,000. He was then 46 years of age, and his wife one year younger. His will was duly admitted to probate and administration had thereunder.

On June 29, 1927, the widow, Hattie Smith, made another will, revoking the former one, and making a different distribution of her property. She made no provision therein for the mother of her deceased husband, but left each of his sisters, named in his will and hers, the sum of $10,000. Hattie Smith died on January 8, 1928, and a petition for its probate was filed in the probate court by the executors named therein. Pending the hearing, plaintiffs, the mother and sisters of James W. Smith, filed the bill

of complaint herein, alleging that the making of the wills executed on March 2, 1926, was pursuant to an agreement that both the husband and wife should make identical wills, and praying for its specific performance. The hearing in the probate court was temporarily enjoined.

The proofs were taken in open court. The trial court found that the oral contract entered into between the husband and wife as to the bequests to the plaintiffs provided for in their wills was valid and enforceable, and directed the payment thereof out of the estate of Hattie Smith. From the decree entered, James Frederick Smith, an adopted son of James W. and Hattie Smith, who is yet a minor, by his guardian *ad litem,* has taken an appeal.

Two questions are presented:

1. Was the alleged contract established?

2. If so, may it be enforced in a court of equity?

1. *The Contract.* The trial court filed an opinion in which he stated:

"Without attempting a review of the evidence presented, I may say that in my opinion there is abundant proof to sustain plaintiffs' contention that James W. Smith and Hattie Smith, his wife, agreed with each other to make wills which would leave a third of the estate of the survivor in equal portions to seven relatives, four of whom were the mother and three sisters of the husband and the other three, a niece and two sisters of the wife."

A reading of the testimony also satisfies us that such an agreement was made. The purpose sought to be accomplished tends strongly to support this claim. Mr. Smith was an only son. His mother, left a widow when he was a small boy, had endured much hardship in rearing him and his sisters, and

when he first engaged in the trucking business she advanced the money with which he purchased his first truck. He appreciated her kindness and assistance. It was but natural that he should want to provide for her old age when making his will. The provision made for her in both wills would be inoperative unless his wife had bound herself by agreement with him that hers should not be changed in the event that she survived him.

2. *Its Validity.* It is conceded that none of the plaintiffs were present at the time the contract was made. The question presented is whether, when made for their benefit, they may enforce its provisions against the estate of the wife. The contract was a mutual agreement on the part of both husband and wife that certain relatives of both should be provided for in their wills. Each of them had an interest in its performance as affecting those who were near and dear to them. The undertaking of each to perform was a sufficient consideration for the promise of the other. That it was oral does not affect its enforcement. *Bird* v. *Pope,* 73 Mich. 483, 490. The breach of it by the one cannot but operate as a fraud upon the other. The husband continued to rely upon the contract, and at his death all of his property passed to his wife under his will. While by mutual consent the contract might have been abrogated during the lifetime of the husband, at his death it became an irrevocable obligation on the part of the wife. It is urged that it may not be enforced by the plaintiffs because they were not parties to it.

Such contracts have been the source of much discussion by courts and text-book writers. While there has been, and is now, some difference of opinion in the courts of this country as to whether

such a promise is enforceable in a court of law, the great weight of authority sustains the right of enforcement in a court of equity. The authorities are collected and commented on in the annotations appearing in 2 A. L. R. 1200 and 33 A. L. R. 741. In *Doyle* v. *Fischer,* 183 Wis. 599 (198 N. W. 763), reported in 33 A. L. R. 733, the rule is thus stated on page 736:

"Where an agreement is entered into by two persons, and especially by husband and wife, to make mutual and reciprocal wills disposing of their separate estates pursuant to their mutual agreement, and where mutual and reciprocal wills are made in accordance with that agreement, and where, after the death of one of the agreeing parties, the other takes under the will and accepts the benefits of said agreement, equity will enforce specific performance of said oral agreement and prevent the perpetration of fraud which would result from a breach of the agreement on the part of the one accepting the benefits thereof."

Counsel for the appellant do not discuss these authorities, but rely upon the holdings of this court to maintain their contention. They call attention to the case of *Modern Maccabees* v. *Sharp,* 163 Mich. 449 (33 L. R. A. [N. S.] 780), in which it was sought to enforce a mutual agreement between a husband and wife that neither would ever change the beneficiaries in their life insurance policies, and in which no consideration for the promise moved to them from the beneficiaries, and wherein this court said that

"unless some legal interest in the performance of the promise vested in the children" (the beneficiaries) "when the promise of the father was made, such interest never vested."

And further:

"The rule, contracts creating trusts aside, is the same whether such enforcement is attempted at law or in equity."

The holding in this case was cited with approval in the later cases of *Edwards* v. *Thoman,* 187 Mich. 361, and *In re Bush's Estate,* 199 Mich. 192, both of which were actions at law.

It is of interest to note some of the previous holdings of this court in which a similar question was presented. In the early case of *Crawford* v. *Edwards,* 33 Mich. 354, an agreement of a vendee with his vendor to assume and pay a mortgage upon property purchased by him was held to be enforceable in equity by the mortgagee, although no privity of contract existed between them. This holding has been always adhered to: See *Kollen* v. *Sooy,* 172 Mich. 214, 219, where the cases so holding are collected.

In *Carmichael* v. *Carmichael,* 72 Mich. 76 (1 L. R. A. 596, 16 Am. St. Rep. 528), it was held (syllabus):

"Where pursuant to a mutual agreement resting partly in parol, and involving the disposition of land, a father and mother made their respective wills, and the father died leaving his will unrevoked, and the mother accepted the provisions made in her favor therein, there has been such a performance and acceptance as takes the agreement out of the statute of frauds, and equity will decree performance by the mother, or take such steps as will prevent her from violating her part of the contract, in fraud of the rights of parties interested therein."

It appeared, however, in that case "that the children all knew of these wills, and the arrangement and purpose under which they were made. They acquiesced in it."

In *Palmer* v. *Bray,* 136 Mich. 85, a mortgage secured money to be paid to the mortgagor's children, and it was insisted that it was unenforceable because there was no privity between them and the mortgagor. After a review of the earlier cases, in which it had been said that "a contract could not be enforced at law by one who was not a party to the contract," it was said:

"That principle has no application to this case, for several reasons. In this case, though the consideration (which was entirely adequate) was furnished by Betsey Doolittle, the mortgagor's promise to pay the principal was made to his children. They were not, therefore, strangers to the contract. On the contrary, they were parties to the contract. The cases relied on are not authority for the proposition that one may not enforce at law a promise made directly to himself on a consideration furnished by a third person, and it has been distinctly held that he may. See *Clark* v. *Clark,* 134 Mich. 602; *Rorabacher* v. *Lee,* 16 Mich. 169. If it were true that the mortgagor's children could not enforce the mortgage because the promise was made to Betsey Doolittle, their aunt, and not to them, she could enforce it, and it would be none the less a valid lien for the indebtedness secured. Moreover, the principle of those cases is confined to actions at law. It has been repeatedly held by this court that in a suit in equity a person for whose benefit a promise is made may enforce it in his own name. See *Corning* v. *Burton,* 102 Mich., at page 95."

This holding was alluded to approvingly in *Preston* v. *Preston,* 207 Mich. 681, 683; *Beckovsky* v. *Abstract & Title Co.,* 208 Mich. 224, 230, and *Clark Memorial Masonic Ass'n* v. *Colman's Estate,* 222 Mich. 599, 603.

The injustice of the rule stated in the *Maccabee Case,* we think, soon became apparent to this court.

In *Preston* v. *Preston,* first reported in 205 Mich. 646, a daughter, who was blind, sought to enforce an oral agreement, entered into between her father and mother, whereby the father agreed that, in consideration of the mother's releasing her dower and homestead rights in a farm, the deed to the premises to be received in exchange therefor should convey to them a life estate with remainder over to the daughter. It was at first held that the daughter might have relief under the provisions of section 12361, 3 Comp. Laws 1915, but, on rehearing, in 207 Mich. 681, it was said that, owing to a doubt in the minds of some of the justices as to the applicability of the statute, the decision might be rested on other grounds. After referring to the holding in the *Maccabee Case* and in *Palmer* v. *Bray, supra,* and quoting from the latter that the promise there made was in effect one made to the children, it was held that the presence of the daughter made her a party to the contract, and rendered it enforceable by her.

In *Bassett* v. *Publication Society,* 215 Mich. 126 (15 A. L. R. 213), the plaintiff, then a boy seven years of age, was living at the home of his father at Madison, Minnesota. A female cousin, who had also been living in the father's home, planned to return to her old home in Michigan, and wanted the boy to go with and live with her. She agreed with the father that, if permitted to take the boy, she would board, clothe, and educate him, and give him everything she owned when she was through with it. The boy "was consulted, and so far as a boy of such tender years could do so, he consented to the agreement." She took the boy, and fully performed on her part except that in her will she gave certain of her property to some of her relatives and the residue to the defendant. In a suit for specific perform-

ance on the part of the boy, then grown to manhood, it was held that by reason of the consent of the boy there was such privity of contract between him and his cousin as entitled him to maintain the suit. The *Preston Case* was cited as authority.

In *Lugauer* v. *Husted,* 228 Mich. 76, a contract. quite similar to that in question was enforced as against the estate of the wife. It appeared, however, that the agreement between the husband and wife was "communicated to and relied on" by the person seeking to enforce it.

In *Jones* v. *Ireland,* 225 Mich. 467, it was held (syllabus):

"In a suit for the specific performance of a contract whereby deceased agreed with plaintiff's mother to adopt plaintiff, treat her as her own daughter, and at her death leave to plaintiff all of the property of which deceased should die seized and possessed, the finding of the court below that said contract was made, that it was fully performed by plaintiff's mother, and that it is binding on deceased's estate, *held,* justified by the record."

The child in that case was but three weeks old. It was said:

"The case comes within the principles stated by Justice WIEST in *Bassett* v. *Publication Society,* 215 Mich. 126 (15 A. L. R. 213), and the cases therein cited."

In *Clark Memorial Masonic Ass'n* v. *Colman's Estate, supra,* and in *Claxton* v. *Margolis,* 248 Mich. 199, both actions at law, it was held that the presence of the person for whose benefit the contract was made rendered it enforceable by them, although not parties to it, under the holdings in the *Preston* and *Bassett Cases.*

No case involving more appealing equities has been presented than that here under consideration. The wills made by the husband and wife clearly indicate the nature of the contract they had entered into and the purpose of each to care for the relatives named on the death of the survivor of them. The husband, seeking to protect the declining years of his aged mother, would surely have made no such will had he not felt certain that the contract was binding upon his wife and enforceable against her estate. In our opinion it should be enforced. The *Maccabee Case* should no longer be held to be a correct exposition of the law of this State relating to such contracts, and it is here definitely overruled.

It may not be inappropriate to add the following from Brantly on Contracts (2d Ed.), 253, quoted in *Seaver* v. *Ransom,* 224 N. Y. 233 (120 N. E. 639, 2 A. L. R. 1187):

"The establishment of this doctrine has been gradual, and is a victory of practical utility over theory, of equity over technical subtlety."

The decree is affirmed, with costs to appellees.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.