HOMUTH WEIDNER V. KATY WEIDNER CROWTHER ET AL.

No. A-5958. Decided April 24, 1957.
Rehearing overruled May 29, 1957.
(301 S.W. 2d Series 621.)

*Alton J. Luckett, Schleyer & Bartram,* both of New Braunfels, *Painter, Painter & Cook* and *W. Lawrence Cook, Jr.,* all of Houston, for petitioners.

*Muchs & Riedel,* of New Braunfels, and *W. S. Gideon,* of Austin, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

We rendered and entered judgment and filed opinions herein on February 6, 1957. Both parties have filed motions for rehearing. The motion of respondents is granted, the judgment rendered and entered on February 6th is set aside, the majority and dissenting opinions filed on that date are withdrawn and the judgments of the trial court and Court of Civil Appeals are now affirmed for reasons now to be stated.

Suit was by Katy Weidner Crowther and Agnes Weidner Bose, daughters of Hugo Weidner by a first marriage, against Homuth H. Weidner, son of Hugo Weidner by his second marriage, to establish and enforce the terms of the joint and mutual will of the said Hugo Weidner and his second wife, Sophie Weidner, to the end that an undivided one-third interest in all property constituting a part of the estate of Sophie Weidner at the time of her death to be awarded to each of the plaintiffs. The named plaintiffs were joined in the suit by their husbands.

At the conclusion of the evidence the trial judge withdrew the case from the jury and rendered the judgment for the plaintiffs for the relief sought. The Court of Civil Appeals affirmed. 291 S.W. 2d 472.

On January 12 ,1923, Hugo and Sophie Weidner executed a joint will containing the following pertinent provisions:

*"First*: We hereby will and direct, that, after the death of one or either of us, all our just debts or the debts of either of us and claims against our estate or the estate of either of us, shall be paid by the last survivor of us out of our estate.

*"Second*: We mutually will, direct and devise, that after the death of either of us, all our property and estate, real, personal or mixed, and *wether* deemed common or separate estate, shall be inherited by and shall at once pass into the unrestricted possession of the last survivor of either of us in fee-simple.

*"Third*: We hereby further will and direct that after the death of the last survivor of us all our property and estate, real, personal, mixed, common or separate, shall be inherited and divided equally, share and share alike, among our three children, to-viz: Agnes May Weidner, Katy Lea Weidner and Homuth H. Weidner."

Petitioner does not in this court question but that the will was also a mutual will.

Hugo Weidner died on June 28, 1936, and Sophie Weidner filed an application for the probate of the above-quoted instrument as his will. An order of the court admitting the will to probate was entered on July 13, 1936, and on the same day Sophie Weidner filed in the probate court a "Notice of Revocation of Will and Application for Administration" reading in part as follows:

"That your Petitioner, after considering the terms and conditions set forth in said will refuses to accept said terms and conditions, and hereby fully and completely revokes said will, and declares same null and void; that your Petitioner refused to qualify as Independent Executrix without bond under the terms of said will, and hereby elects not to accept any other terms and conditions named in said will;

"That your Petitioner is desirous that she retain the status of an heir at law of Hugo Weidner, deceased, and that any property belonging to the community estate of Hugo Weidner and Sophie Weidner pass to your Petitioner under the Statutes of Descent and Distribution of the State of Texas."

Thereafter Sophie Weidner was appointed and qualified first as temporary and later as permanent administratrix of the estate of Hugo Weidner, deceased. The administration was closed and the administratrix discharged on September 17, 1936.

On July 31, 1936, Kathy Crowther and Agnes Bose, joined by their husbands, executed deeds conveying to Sophie Weidner all property owned or claimed by them under the will of Hugo Weidner, deceased, or as his heirs under the laws of descent and distribution. Sophie Weidner paid $1400 as consideration for the execution of each of the deeds. Homuth Weidner executed to his mother a similar deed on August 26th and received in consideration therefor her note for $1400.

On November 30, 1936, Sophie Weidner executed a new will devising all of her property to her son, defendant and petitioner herein, and making him independent executor of the will. Mrs. Weidner died on June 5, 1953. Her will was admitted to probate and petitioner claims all of her property.

The record clearly discloses that Sophie Weidner believed that after her husband's death she could render the mutual will unenforceable by declining to take benefits under it. It was that belief which prompted her to file the "Notice of Revocation of Will and Application for Administration." She also believed that once the will was annulled title to Hugo Weidner's property would pass and vest under the laws of descent and distribution, and that each of his three children would inherit a one-third interest therein. It was that belief which prompted her to purchase from the three children such interest as they then owner or claimed as heirs of Hugo Weidner.

■ Petitioner insists in this court that a mutual will may not be enforced unless the surviving party thereto has accepted benefits thereunder. By "benefits" he means an interst in property. He further insists that Article 4610, Vernon's Annotated Texas Statutes, prohibits the enforcement of a mutual will by which husband and wife, by agreement, have undertaken to "alter the legal orders of descent, either with respect to themselves, in what concerns the inheritance of their children or posterity, which either may have by any other person, or in respect to their common children." We do not agree.

One party to a mutual will may not render it unenforceable after the death of the other party by declaring a revocation

thereof and declining to take benefits under it. Death of one of the parties to a mutual will, or mutual wills, will put effective revocation thereof beyond the legal right and power of the survivor. As long ago as 1769 Lord Chancellor Camden announced the foregoing rule, by way of dictum, in Dufour v. Pereira, 1 Dickens 419. In that case the surviving widow probated a mutual will as the will of her deceased husband and took benefits under it. The question was whether it was in the power of the survivor to revoke the mutual will. On the power of revocation Lord Camden said: "But I cannot be of the opinion that either of them could, during their joint lives, do it secretly; or that, after the death of either, it could be done by the survivor by another will."[1] See also Baker v. Syfritt, 147 Iowa 49, 125 N.W. 998, 1002-1003; Edson v. Parsons, 155 N.Y. 555, 50 N.E. 265, 268; Frazier v. Patterson, 243 Ill. 80, 90 N.E. 216, 218, 27 L.R.A. (N.S.) 508; Smith v. Thompson, 250 Mich. 302, 230 N.W. 156, 73 A.L.R. 1389. In none of the cited cases was the pronouncement of the rule we have here laid down essential to a decision of the case. On the other hand we have found no case, and have been cited to none, in which in an essential pronouncement it was said that death of one of the parties would *not* prevent an effective revocation of a mutual will. In short, we have found no decided case in which a determination of the question was essential to a decision of the case, as it is in this. An unwillingness to accept all of the dicta in the Dufour case will not debar us from accepting that which we regard as sound.

At the heart of a mutual will lies a contract of the parties. It would be manifestly unjust to permit the surviving party to the contract to disavow it and its obligations, as those obligations are incorporated in their will, after the other party has fully performed by abiding by it until his ability to revise it has been terminated by death.

Acceptance of benefits by the survivor as a condition precedent to enforcement of the terms of a mutual will was not regarded as the determining event in Kirtley v. Spencer, Texas Civ. App., 222 S.W. 328, writ refused, Wagnon v. Wagnon, Texas Civ. App., 16 S.W. 2d 366, writ refused or French v. French, Texas Civ. App., 148 S.W. 2d 930, writ dism., correct judg., in each of which the court indicated that probate of the will by the survivor was regarded as the determining event; or in Rossetti v. Benavides, Texas Civ. App., 195 S.W. 208,

---

[1] The full report of the Dufour case will be found in Menke v. Duwe, 117 Kan. 207, 230 Pac. 1065, 1068-69.

writ refused, in which qualification of the survivor as executor was regarded as the determining event. If a husband and wife, each owning 100 acres of land as separate property, should execute a mutual will by which, pursuant to agreement, the husband's land was devised in fee simple to a child A and the wife's land was devised in fee simple to child B, there would be no benefits for the survivor to take under the will. Surely it would not be contended that if the husband died first the wife could effectively revoke the will as to her land thus permitting child A to take all of the husband's land under the will and a one-half interest in the wife's land under the laws of descent and distribution.

■ We recognize that a will is ambulatory in character and that the surviving party to a mutual will may revoke it, but *effective revocation* will be prevented by a court of equity. In Murphy v. Slaton, 154 Texas 35, 273 S.W. 2d 588, 593 in dealing with the problems we said: "Annie E. Murphy [the survivor] technically could have revoked her will, but the beneficiaries under the joint [and mutual] will, as probated at the death of B. H. Murphy, would have had a cause of action to come into court with an equitable proceeding and receive their rights under such probated joint will." Some courts have said that the survivor and those claiming under the survivor would be estopped to assert a right to have the property which is disposed of by the will pass otherwise than according to its terms. Some have said that the property of the survivor would be impressed with a trust in favor of the beneficiaries under the will. Others have said, where there was an acceptance of benefits, that the survivor had "elected" to take under the will and had thereby ratified and confirmed it. One writer has suggested that the true basis on which the courts act is in requiring specific performance of the contract evidenced by the will. The Doctrinal Relationships of Concerted Wills and Contract, by W. F. Young, Jr., 29 T.L.R. 439. In any event, a court of equity will afford relief to one who seeks enforcement of the terms of a mutual will, after the death of one of the parties thereto, when the terms of the will are not themselves inequitable. We do not regard as inequitable the equal division of the common property of Hugo and Sophie Weidner among the three children, all of whom lived for many years as members of one family. We are not called upon in this case to decide whether one could obtain the aid of a court of equity to enforce an inequitable disposition of property by a mutual will.

■ The mutual will of Hugo and Sophie Weidner was not ren-

dered invalid by Article 4610. Of equal dignity with Article 4610 is the statute which permits every person, competent under the provisions thereof, to dispose of his property by will. Texas Probate Code, Sec. 57. (Article 8281, Revised Civil Statutes of Texas, 1925, repealed by adoption of the Probate Code, Sec. 57 Vernon's Texas Stat.).

■ The literal wording of Article 4610 applies only to ante-nuptial agreements. The courts have extended its terms to post nuptial agreements as a matter of public policy. Cox v. Miller, 54 Texas 16; Green v. Ferguson, 62 Texas 525; Groesbeck v. Groesbeck, 78 Texas 664, 14 S.W. 792; Protzel v. Schroeder, 83 Texas 684, 19 S.W. 292. The public policy declared by our courts, as it relates to the validity of post-nuptial contracts, has been modified by constitutional amendment and by statute. Article 16, Sec. 15, Vernon's Annotated Constitution of Texas; Article 4624a, Vernon's Annotated Texas Statutes. Husband and wife may now make valid post-nuptial contracts for a division of their community property in the manner and under limitations imposed by the statute, even though the division may operate to "alter the legal orders of descent."

In Graser v. Graser, 147 Texas 404, 215 S.W. 2d 867, we held that Article 4610 prevented enforcement of the terms of an instrument having the attributes of a contract but not meeting the legal requirements of a will, but we recognized in the Graser opinion that the statute would not operate to invalidate a mutual will which incorporated the terms of an agreement for disposition of property. 215 S.W. 2d 873. We could hardly have done otherwise. Article 4610 has been a part of the statutory law of this state since 1840. The statutory law of the state has also authorized the disposition of property by will since 1840. Over the years the courts have often enforced mutual wills which altered "the legal orders of descent" in that property owned by husband and wife was divided among their children in a manner different from that in which they would have taken as heirs under the laws of descent and distribution. For example see Chadwick v. Bristow, 146 Texas 481, 208 S.W. 2d 888; Nye v. Bradford, 144 Texas 618, 193 S.W. 2d 165; Larrabee v. Porter, Texas Civ. App., 166 S.W. 395, writ refused; Moore v. Moore, Texas Civ. App., 198 S.W. 659, writ refused; Murphy v. Slaton, 154 Texas 35, 273 S.W. 2d 588.

■ Under the terms of the joint and mutual will the fee simple title to Hugo's property was devised to Sophie. While Sophie could not revoke the will after Hugo's death, we know of no

rule of law which prohibited her from renouncing any rights or benefits under the will, so long as her renunciation did not result in defeating or restricting the rights of other beneficiaries. She could not free her own property from the burdens imposed by the will, but she could free Hugo's property of the burdens in her favor, thus permitting the fee simple title to that property to pass and vest in the other beneficiaries under the laws of descent and distribution. The instrument filed by Sophie Weidner did just that. Words more appropriate for that purpose could hardly have been chosen. She sought, primarily, to revoke and annul the will, but she went further. She refused to qualify as executrix under the will and elected "not to accept any other terms and conditions named in the will." In addition, she expressed the desire that she retain the status of an heir at law of her deceased husband and that the community property pass to her under the "Statutes of Descent and Distribution." The record indicates that the only property owned by Hugo at his death was community.

Under the statutes of descent and distribution Hugo Weidner's one-half of the community property, freed from the devise to Sophie by her renunciation, passed in fee simple to his three children. The three children then sold and conveyed to Sophie Weidner all title and interest they owned or claimed in the property as heirs at law of their father. The deeds were effective to vest in Sophie Weidner the fee simple title to the property theretofore belonging to Hugo Weidner, the title being acquired by her by purchase from the children and not by devise under the will. Petitioner asserts that under the rule announced in the recent case of Murphy v. Slaton, 154 Texas 35, 273 S.W. 2d 588, title to this property does not pass under the terms of the joint and mutual will.

In Murphy v. Slaton we recognized that makers of mutual wills can make them operative on all property owned at the death of the survivor by expressing an intention to do so in "plain, specific and unambiguous language," but we said: "In the absence of such clearly expressed intention we feel that the better reasoning supports the rule that after-acquired property owned by the survivor in his or her individual right does not pass." 273 S.W. 2d 595.

■ To determine whether the interest in the property acquired by Sophie after the death of Hugo passes under the will we must examine and interpret the will. Paragraphs Second and Third are controlling. The provisions of these paragraphs dealing with "our property" are to be interpreted as though each of

the parties were making separate disposition of his or her property only. Graser v. Graser, 147 Texas 404, 215 S.W. 2d 867, 870. When read together the two paragraphs do not purport to devise to the survivor a conventional life estate in the property with a remainder to the three chlidren. Neither do they purport to devise to the survivor a fee simple title to the property with a limitation over to the children of that which remains at the death of the survivor, nor a life estate in the property with an absolute and unlimited power of disposition and with a limitation over to the children of that which remains at the death of the survivor. We are not called upon to decide, therefore, whether the devise to the children would be void or whether it would create an executory interest in the children. See McMurray v. Stanley, 69 Texas 227, 6 S.W. 412; Edds v. Mitchell, 143 Texas 307, 184 S.W. 2d 823, 158 A.L.R. 470; Harrell v. Hickman, 147 Texas 396, 215 S.W. 2d 876; Howard v. Carusi, 109 U.S. 725, 3 Sup. Ct. 575, 27 L. Ed. 1089; 19 Am. Jur., 560, Sec. 101, 575, Sec. 120; 75 A.L.R. 71, et seq.; 33 Am. Jur. 498, Sec. 36. Paragraph Second in plain and unambiguous language devises to the survivor an estate in fee simple in all of the property, separate or community, owned by the parties. Paragraph Third devises to the children, at the death of the survivor, an estate in fee simple in all of the property, separate or community, owned by the parties. Paragraph Third does not use the words "fee simple" as does paragraph Second, but it contains words of devise which in the absence of words of limitation pass a fee simple title. Article 1291, Vernon's Annotated Texas Statutes; 14 Texas Jur. 933, Deeds, Sec. 155; Bell County v. Alexander, 22 Texas 350, 351, 358.

■ When the provisions of the will are read and interpreted as though each of the parties thereto were making a separate disposition of only his or her property it clearly appears that each of the parties undertook by paragraphs Second and Third to provide against two contingencies. By paragraph Second each undertook to make disposition of his or her property in the event he or she was the first to die. In that event the fee simple title to the property of each, whether separate or community, was devised to the survivor. By paragraph Third each undertook to make disposition of his or her property in the event he or she was the last to die. In that event the fee simple title to the property of each, whether separate or community, was devised to the children in equal shares. When the will is thus interpreted the contract between the parties, incorporated in and evidenced by the will, appears clearly to have been that if the first to die would devise to the survivor the fee simple title

to all property, separate and community, owned at death, the survivor would devise in fee simple to the three children equally all property, separate and community, owned at death. In carrying that contract into effect each of the parties expressed in the will in "plain, specific and unambiguous language" the intention that all property, separate and community, owned by the survivor at death, which necessarily included after-acquired property, should be inherited by the three children in equal shares. The petitioner and the respondents are each entitled, therefore, to a one-third interest in all property owned by Sophie Weidner at her death.

What we have written disposes of petitioner's first, second and third points of error. In the light of what we have written petitioner's fourth, fifth and sixth points of error become immaterial.

The judgments of the Court of Civil Appeals and the district court are affirmed.

The parties will have fifteen days in which to file motions for rehearing. Rule 515, Texas Rules of Civil Procedure.

Opinion delivered April 24, 1957.

Rehearing overruled May 29, 1957.