**Alfonso M. GONZALEZ et al., Appellants,**

**v.**

**Juan M. GONZALEZ, Appellee.**

**No. 513.**

Court of Civil Appeals of Texas, Corpus Christi.

June 25, 1970.

Rehearing Denied Aug. 18, 1970.

Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellants.

Bob J. Spann, of McDonald, Spann & Smith, Corpus Christi, for appellee.

## OPINION

NYE, Justice.

Juan A. Gonzalez and his wife Isabel M. Gonzalez executed a single instrument as a joint and mutual will in 1941. The husband, Juan A. Gonzalez died in 1954. His wife Isabel M. Gonzalez qualified as independent executrix of the estate. Fourteen years later the wife Isabel M. Gonzalez died and their eldest son Juan M. Gonzalez qualified as independent executor of her estate. This declaratory judgment action for a construction of the will was brought by six of the seven children of the husband and wife against their oldest brother, the executor. The trial court entered judgment favorable to the executor and the five brothers and the sister of the executor have perfected their appeal. The question of construction of the will is: What property remains as the estate of Isabel M. Gonzalez to be administered by the executor?

Inasmuch as the husband and wife, as makers of the joint and mutual will, used language with reference to the circumstances existing at the time of the execution of the will, we will consider the evidence that was introduced before the trial court that tends to place the court in the husband and wife's situation at the time they drew the will. The facts and circumstances surrounding the execution of this joint and mutual will, aids the court in discovering the meaning attached to it. 95 C.J.S. Wills § 635, p. 905, et seq.; 61 Tex.Jur.2d, § 235, § 171.

In October 1941 Isabel M. Gonzalez filed suit for divorce against her husband Juan A. Gonzalez. She caused restraining orders to be issued, a receiver to be appointed and obtained other ancillary relief. At the time of the filing of the divorce, the husband and wife owned extensive real estate holdings, including a lumber yard. They had considerable cash, trucks and other personal property. The husband was engaged in a low cost real estate rental business and apparently was in full control of all the properties. The husband and wife had seven children at the time of the filing of the divorce. The eldest and the only girl, was age twenty. The oldest son, Juan M. (the appellee) was nineteen, and five others scaled downward to the youngest, who was age six.

Just prior to the time for the hearing on these various ancillary requests, a written settlement was reached between the husband and wife. This settlement agreement required the husband to convey to his wife as her separate property, certain property in Corpus Christi, and to his daughter other property that would be her separate estate. Each was granted the right to all future rents. The agreement further provided that the bank accounts and money held in the hands of the receiver would be transferred over to the wife as her separate estate. As part of the agreement the wife agreed to dismiss the pending divorce and the husband agreed that all of the rest of the property owned by either of them would belong to both of them in equal shares. The husband further agreed that the rents from all of the rent properties would thereafter be collected by their eldest son Juan M. Gonzalez, to be deposited to the credit of the wife and to be used by her for the support of the family and maintenance of their property.

As a result of this written settlement, the divorce action was dismissed on November 1, 1941 and all the temporary restraining orders were set aside and terminated. This included a restraining order which had restrained the husband from coming around molesting his wife and children. The court ordered the husband to convey to the wife as her separate estate the funds in the banks and ordered that all of the funds held by the receiver, after satisfying the costs, be deposited in one of the banks to the credit of the wife as her separate estate.

Following the dismissal of this suit for divorce, the husband and wife executed the will that is before us for construction. It was drawn by the wife's attorney. A few general and familiar rules governing the construction of wills to aid the court in ascertaining and giving effect to the intention of the testator are appropriate. The intention of the makers of the will is of course of paramount importance. It must be arrived at from a consideration of each and every provision of the will. If possible, every provision must be given effect, and a construction adopted which will, if possible, bring every provision into harmony with each other and into harmony with the general purpose of the will. We therefore deem it necessary to recite the entire will, because of the nature of the circumstances herein recited that surround the execution of this will, and so, that by applying these familiar rules of construction, the terms of this will can be ascertained.

"We, Juan A. Gonzalez, age 61 years, and Isabel M. Gonzalez, age 41 years, husband and wife, both residents of Corpus Christi, Texas, and both being of sound mind, do make this our last will and testament, hereby revoking all other wills heretofore made by either of us.

I. This will covers all property standing in the name or names of each and both of us.

II. I, Juan A. Gonzalez, hereby name and constitute my wife, Isabel M. Gonzalez, independent executrix under this will. If my wife should precede me in death, then I constitute my son, Juan M. Gonzalez, independent executor under this will.

III. I, Isabel M. Gonzalez, hereby name and constitute my husband, Juan A. Gonzalez, independent executor under this will. If my husband should precede me in death, then I constitute my son, Juan M. Gonzalez, independent executor under this will.

IV. We each direct that the executrix or executor under this will shall not be required to make or file any bond, and that no action be taken in the probate court or in any other court in connection with our estates other than to file this will and have it admitted to probate and to file an inventory and appraisement.

V. The spouse who dies first devises and bequeaths all of the estate now or hereafter owned by both spouses or standing in the name of either spouse, in eight (8) equal parts unto the surviving spouse and their seven (7) children: Rosa M. Gonzalez, Juan M. Gonzalez, Jose M. Gonzalez, Arnulfo M. Gonzalez, Alfonso M. Gonzalez, Manuel M. Gonzalez, and Adolfo M. Gonzalez; and the surviving spouse devises and bequeaths all of his or her estate unto their seven (7) children in equal parts.

VI. If any one or more of said seven (7) children should die before the death of either or both of their parents, then and in such event said deceased child's part shall go and pass to his or her child or children, if any, in equal parts; but if such deceased child or children shall not have any child or children, then and in such event, the part which would otherwise pass to said deceased child or children shall pass to the surviving spouse and surviving children of the makers of this will in equal parts.

VII. After both spouses named in this will have died, then any of said children may demand his share of said estate after such child becomes twenty-one (21) years of age, and in such event the executor shall set aside to such child over twenty-one (21) years of age his equal portion of this estate. However, said child may leave his part of said estate in the joint estate belonging to all of them, and in such event it shall continue to be managed by such executor.

VIII. The executor or executrix named under this will shall have full

authority to grant, sell, convey and otherwise alienate any part of said estate with the written consent of all children over nineteen (19) years of age, but shall not have authority to grant, sell, convey or otherwise alienate any part of said estate without the written consent of all of said children over nineteen (19) years of age.

IX. The executor or executrix acting under this will shall have full authority to rent, repair and improve all property in said estate, and to have possession of all money, rents, revenues and income from said estate, and authority to use all such funds for the support of all members of said family, and for the maintenance and improvement of all property in said estate, and shall have full authority to invest and reinvest the funds of said estate in such way as the executor or executrix shall deem best for said estate.

X. This is a joint will and is based upon a mutual consideration passing between the husband and wife, and shall never be revoked by either of them without the written consent of the other during their lifetime, and shall never be revoked by the survivor after one of them has died.

Witness our hands at Corpus Christi, Texas this 1st day of November, A.D. 1941, in the presence of Lloyd E. Stiernberg, Joe P. Hatchitt, Thelma S. Hatchitt, Rosa M. Gonzalez, Juan M. Gonzalez and M. G. Marquez, who attest the same at our request and in our presence and in the presence of each other."

The husband died August 25, 1954. His wife qualified as independent executrix under the will shortly after his death. The eldest son Juan M. (the appellee) made an attempt to be appointed independent executor, but withdrew in favor of his mother. Later on he filed suit against his mother seeking an accounting and a partial distribution of the profits from her as independ-

ent executrix. The court ordered the executrix to file a complete accounting. On appeal the judgment was reversed and rendered dismissing the suit for want of jurisdiction. The appellate court held that the probate court had no jurisdiction over an independent executrix nor of the estate she administers, so long as the executrix was faithfully carrying out the provisions of the will. Gonzalez v. Gonzalez, 309 S.W.2d 111 (Tex.Civ.App.—Ft. Worth, 1958, n. w. h.).

Ten years later, on May 6, 1968, the wife died, leaving the seven children surviving. Juan M. immediately made application for appointment as temporary administrator of the estate and thereafter made application to be appointed independent executor. He offered the joint will for probate a second time. He qualified as independent executor of the estate of his mother Isabel, filed an inventory, appraisement and list of claims, and stated that all of the real property set forth in the exhibit belonged to Juan A. and Isabel Gonzalez. He stated as far as he was able to determine all of the property was the community property of Juan A. and Isabel Gonzalez; that no real property was acquired after the death of Juan A. by Isabel M. Gonzalez during her lifetime.

On October 25, 1968, the appellants, being the sister and five brothers of the executor, wrote to him and stated that in pursuance to Paragraph VII of the joint will of Juan A. and Isabel M. Gonzalez, deceased, they were demanding of him in his individual capacity and as independent executor of the estate of Isabel M. Gonzalez, deceased, to turn over, give up and distribute to each of them as beneficiaries, their undivided 1/7th part of the properties; that they were withdrawing and revoking any right that he had or may be asserting in their 6/7ths of the estates. Juan M. refused to turn over the estate to the appellants. Whereupon, suit was filed against him requesting that he file an accounting; that a receiver be appointed; that the property be partitioned; that a temporary in-

junction be issued; and that a partial summary judgment be granted construing the will. The trial court ordered Juan M. to file an accounting and required that he post a bond in the amount of $125,000.00 to be approved by the county judge sitting in probate. The court then enjoined and restrained the appellants from interfering with Juan M. in the collection of rents and the management of the properties.

Juan M. posted the bond and filed an inventory. The inventory showed assets totalling $232,974.61 and liabilities of $8,707.73. A part of this liability included the funeral expense of Isabel M. Gonzalez. Thereafter, motions to sever the various causes of actions were filed by all parties. The court heard arguments and considering the pleadings, found that the cause of action for declaratory judgment and construction of the will was a separate and distinct cause of action from the other claims in the suit. The court ordered that the cause of action insofar as it relates to the construction of the will of Juan A. and Isabel M. Gonzalez be severed and docketed as a separate cause with a new number and new docket sheet, and then proceeded to trial on the severed cause.

At the conclusion of this trial the court entered its declaratory judgment in which it found that:

"1. The joint will is dated November 1, 1941.

2. Juan A. Gonzales died August 25, 1954.

3. Isabel M. Gonzales qualified as Independent Executrix October 14, 1954.

4. Isabel M. Gonzalez died May 6, 1968.

5. Juan M. Gonzales was granted letters testamentary as an Independent Executor May 20, 1968.

6. All of the children named in the will are now twenty-one (21) years of age.

7. Each of the Plaintiffs have demanded of the Independent Executor their respective shares in the estate.

8. The principal assets of such estate consist of real estate, most of which is in the form of low-cost rent houses.

9. While certain evidence was received as to circumstances attending the making of such will, the Court is of the opinion and finds that the terms of such will are not ambiguous and that the will may be construed and the intentions of its makers determined from an examination of the will itself.

10. The Court finds no need to construe those parts of such will that are not matters of controversy."

The Court then placed the following construction upon the will:

### I.

"It was the intentions of the makers of such will that such estate should be administered under and by an Independent Executor or Executrix. The powers and obligations granted and imposed upon such Independent Executor or Executrix, including that of caring for the rights of minors, were not unusual from those granted frequently in similar cases.

"It was not the intention of the Testator or Testatrix to establish or create a testamentary trust.

### II.

"Under a proper construction of the terms of such will and the probate proceeding thereon, there can exist but one (and not two) estates in this case or under such will.

### III.

"It is presumed, as a matter of law, that the makers of such will intended

that all probate proceedings thereon would be in keeping with Texas law regulating same. Sec. 152 of the Probate Code of this state sets forth a procedure available to a distributee seeking a distribution of his share of an estate being administered by an Independent Executor.

"Neither under the terms of such will, nor under the law, can this Court at this time in this declaratory judgment order a partition of such estate or award title and possession of a share to a distributee.

"Entered and Signed This, the 29th day of May, 1969."

There has never been any dispute between the parties as to the validity of the will in question, or the testamentary capacity of Juan A. or Isabel M. Gonzalez. The dispute has been over the proper construction and interpretation of its provisions. The appellee has exercised continuous, complete and exclusive control, possession and authority over all of the property previously owned by the husband and wife since the death of Isabel Gonzalez. He has continuously refused to partition the property or deliver any portion thereof to appellants.

The appellants contend here that the will, by virtue of Paragraph V, devise ⅛th of the joint property to Isabel M. Gonzalez, and ⅞ths of the joint properties to the seven children, subject however to a life estate in the ⅞ths in Isabel M. Gonzalez, and that by her will, the ⅛th received by her in the joint property, was devised to the appellants and appellee equally. The appellants further contend that Paragraph VII of the will which creates a life estate in ⅞ths of the property in Isabel, terminated on her death, and appellants and appellee are now entitled to immediate possession of this property. The appellants contend further that partition and distribution should be made of all of the property, including the estate of Isabel M. Gonzalez since there is no necessity for administration by appellee as independent executor of her estate.

It has been the contention of appellee on the other hand, that the will creates but one estate, at least for administration purposes, and therefore, appellee as independent executor of the estate of Isabel is entitled to administer, not only the property belonging to her estate, but all property which belonged to the joint estate of the husband and wife.

Appellee argues that it was the intent of the makers of the joint will that he as executor should manage the entire estate. This he says is evident by certain terms in the will which manifest this intention. For instance he states that the will provides that all children over 21 years of age could leave their portion in the estate to be administered by the executor. The will provided that the executor would continue to manage the estate until all the parties attained 21 years of age and thereafter until they each wanted their share. Had both of the spouses died prior to the time the children had attained 21 years of age, he as executor would be administering their share. Now, although all the children are over 21 years of age and have demanded their share, it is his responsibility he says, to administer the entire estate while he determines and makes a proper accounting of the estate for the period during the lifetime of the surviving spouse, and until he can determine whether any advancements or loans were made to the children during his mother's administration. In the meantime, he contends, he is entitled to collect the rents, make repairs on the property and look after the estate generally. Thereafter when all this has been accomplished, he then has the right to distrbute to each child his equal ⅐th share of the estate.

The respective theories advanced by the appellants and appellee do not agree entirely with the correct construction of the will. The cardinal rule to be followed

in construing a will as we have pointed out, is to seek and enforce the intention of the testator and testatrix. If the intention of the makers of the will be not clearly expressed by the particular language used, their intent may be found by looking to the provisions of the will as a whole and to the circumstances surrounding its execution. Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579 (Tex.Sup.1955).

The divorce settlement agreement gave to Isabel, the wife, some separate property and control of at least some of the community funds. These funds were to be used by her as she saw fit for the support of the family and maintenance of their properties during her marriage with Juan A. Gonzalez. All of the rest of the properties belonging to either Isabel or her husband, were to be owned by both of them in equal shares.

Shortly after this divorce settlement, Isabel and her husband determined that they would enter into the joint disposition of their properties by means of the mutual will. Their will was executed pursuant to an agreement to dispose of their estates in a certain way. The will covered all of the properties standing in the name of both the husband and the wife. There was no attempt to revoke this will by either the husband or wife after its execution in 1941 or by the wife after the death of the husband in 1954. The first question that must be determined was what estate was left to the wife and the seven children following the death of the husband under this will?

The appellants contend that Isabel took a life estate in ⅞ths of the property under her husband's will. The decision whether a life estate is or is not created by a particular will must necessarily depend upon the provisions of the specific instrument. One cited case is, as a rule, of little authority for another. Where the husband devises the property to the wife and her children and the construction of the will is doubtful, the courts lean toward giving the surviving parent a life estate

where there is even a slight indication of an intention that the children should not take jointly with that parent. 33 Am.Jur. 474; Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579 (Tex.Sup.1955). But this is not the situation here.

■■■ Generally speaking, enjoyment by the life tenant is the very essence of a life estate. Usually there are certain words which denote and manifest an intention on the part of the testator to pass to the devisee a right to enjoy, use or possess the property during the period of her life. Most always this right of use during the life term is to the exclusion of the remainderman. The relationship of the life tenant to that of a remainderman is frequently termed that of a trustee, in the sense that he cannot injure or dispose of the property in derogation of the rights of the remainderman. The life tenant differs from a trustee of a trust in that he may use the property for his exclusive benefit and usually he takes all the income and profits for himself during his tenancy. Wagnon v. Wagnon, 16 S.W.2d 366 at 370 (Tex.Civ.App.—Austin, 1929, err. ref.); 31 C.J.S. Estates § 34; 37 Tex.Jur.2d, Life Estates, Remainders, Etc., § 5. The estate created in the testator's wife, Isabel under the will, was not a life estate. See 33 Am.Jur., Life Estate, § 4, p. 463 et seq.

■■■ We hold that the testator created a testamentary trust. A review of a few general rules of construction are helpful. There are no particular form of words that are required to create a trust. Technical words expressly creating the trust are not essential. It is sufficient if the intent to create a trust appears reasonably clear from the entire instrument, construed in the light of the circumstances which attended its execution. 61 Tex.Jur. 2d § 261; 57 Tex.Jur.2d § 23, p. 400, Trusts. To create a trust by will or any other instrument, it must identify the person, the property and the purpose of the trust. It is not absolutely necessary that the legal estate be devised in specific terms to the trustee, so long as the intent to create a

trust is otherwise clear. It is sufficient that the nature of the duties to be performed by the trustee that the taking of such estate in the trustee, will vest by implication. 96 C.J.S. Wills §§ 1008–1009; 61 Tex.Jur.2d § 260, p. 404 and following, etc. One of the basic tests of whether a trust is created by a will is whether the fiduciary is granted the power to collect and apply the income. There is nothing in the office or obligation of executors that preclude them from acting as trustees of a testamentary trust for other beneficiaries. An executor is always, in a certain sense, a trustee and may act in the dual capacity as executor and trustee. There is no prohibition of one of several beneficiaries of a trust serving as trustee of the trust. 96 C.J.S. Wills § 1008, p. 524; 54 Am.Jur. § 117.

■ Here the joint will conveyed all of the property, separate and community, to the wife and the seven children in eight equal parts. The wife elected to take under the will. The testamentary trust gave her the power, the duty and obligation of a trustee, in addition to that as executrix. She was to rent, repair and improve all of the property. She was to have possession of all of the money, the rents, the revenues and income. She was obliged to invest and reinvest the funds as she deemed advisable for the best interests of the eight beneficiaries. The income and revenues and funds received by her were to be applied by her for the support of all the members of the family. She was obligated to maintain and improve the trust property with the use of these funds. The will named the persons who were beneficiaries. It named (by implication) the trustee. It described the trust Res; it set forth the purposes of the trust, and provided for its term. The essential elements of a trust estate were present. We hold that a trust was created for the benefit of the wife and children as completely and effectively as if the testator had employed the word "trust" or "trustee". Covey v. Knight, 215 S.W.2d 684 (Tex.Civ.App.—Amarillo 1948, n. r. e.);

Estes v. Estes, 267 S.W. 709 (Tex.Comm'n App.1924, op. adopted) and compare Trimble v. Farmer, 157 Tex. 533, 305 S.W.2d 157 (Tex.Sup.1957).

■ The trust came to an end upon the happening of three events: (1) The death of the surviving spouse (Isabel M. Gonzalez); (2) the attaining of twenty-one years of age of each child as to his undivided trust estate; and (3) such child's demand of his equal portion of the estate. Since all three of these events have taken place, the testamentary trust terminated. The legal as well as the equitable title vested in those entitled to the remainder of the trust estate. 96 C.J.S. Wills § 1050.

■ Juan M. Gonzalez, the appellee, was an alternate executor and as such was a possible successor trustee under the will. There was no evidence, however, that any of the children wanted to leave their part of the estate in the trust. In fact, it was undisputed that they all wanted their share of the estate distributed to them following the death of their mother, Isabel M. Gonzalez. There were two estates under the joint will and both could be probated. Nye v. Bradford, 144 Tex. 618, 193 S.W. 2d 165 (Tex.Sup.1946). The first was the trust left by the husband Juan A. Gonzalez. This consisted of the properties owned by Juan A. Gonzalez and Isabel M. Gonzalez at the time of his death. The second was the property, if any, acquired by Isabel M. Gonzalez in her individual right after Juan A. Gonzalez' death and which she may have accumulated as beneficiary under the trust or otherwise. Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588 (Tex.Sup.1954). The trust estate was not a part of Isabel M. Gonzalez' estate.

Appellants raise questions relative to the partitioning of the properties. The matter of partition is not before this Court on the severed cause of action construing the will. The points of error inconsistent with this decision are overruled. Judgment of the trial court is reversed and judgment is here

rendered construing the will in conformity with this opinion.

Reversed and rendered.

SHARPE, Justice (concurring in part and dissenting in part).

This suit was brought by appellants, brothers and sister of appellee, all of whom are the sole and surviving children of Juan A. Gonzalez and Isabel M. Gonzalez, deceased, for partition and distribution of properties devised to appellants and appellee under the joint and mutual will of their said parents, for an accounting, damages, injunctive relief, removal of appellee as independent executor and appointment of a receiver.

After certain preliminary proceedings, both appellants and appellee filed motions to sever. At a pre-trial hearing the lower court, apparently after amendment of the pleadings which raised additional questions concerning declaratory judgment and construction of the will, entered an order which in part found " * * * that the cause of action for declaratory judgment and construction of the Will is a separate and distinct case of action from the other claims in such suit * * * " and decreed that the cause of action of all parties as it related to the construction of the will be severed and docketed separately and that copies of the trial pleadings along with a copy of the Order of Severance be placed in the file of the severed cause. The judgment of the trial court entered on May 29, 1969, recites in part that "ON THE 26th day of May, 1969, in keeping with the previous order of severance made and entered in the original suit filed herein, this Court began the consideration of the application for a declaratory judgment to construe the joint will of Juan A. Gonzales and Isabel M. Gonzales * * * " and that "It is the order, judgment, and decree of the Court that the following is the construction which should be placed upon such will: * * * " The majority opinion sets out the material portions of the will and the judgment of the lower court.

The questions involved are not fully stated in the majority opinion. In my view, the questions presented on this appeal are those contained in appellants' twenty-seven points of error. Appellants' points may be generally divided into the following six categories and summarized as follows: (1) Appellants' points 1–10, which assert in substance that the judgment of the trial court completely failed to construe the will of Juan A. and Isabel M. Gonzalez, or, at best, construed it only partially; and that the trial court erred in making or failing to make certain holdings in connection with construction of the will; (2) Appellants' points 11–16 and 18–21 which assert in substance that the trial court erred in failing to order a partition and distribution of the properties belonging to the parties, or in making or refusing to make certain holdings in connection therewith; (3) Appellants' point 17, which asserts that the trial court erred in refusing to grant their motion for summary judgment; (4) Appellants' point 22, which asserts that the trial court erred in holding that there can exist "but one (and not two) estates in this case" or under the joint will of Juan A. and Isabel M. Gonzalez for the reason that such will, as the will of Juan A. Gonzalez, by paragraph V thereof devised a ⅛ undivided interest of the joint property of Juan A. and Isabel M. Gonzalez to Isabel M. Gonzalez and devised an undivided ⅞ths of said joint property to appellants and appellee, subject to a life estate in Isabel M. Gonzalez, and said will, as the will of Isabel M. Gonzalez, devised an undivided ⅛ of said joint property to appellants and appellee, thereby creating two separate and distinct estates; (5) Appellants' point 23 which asserts that the trial court erred in holding that section 152 of the Probate Code of Texas is available to appellants to compel the distribution of said estate or estates for the reason that the provision mentioned has no application, and the Pro-

bate Court has no jurisdiction to compel a distribution of said estate or estates; (6) Appellants' points 24–27 which assert that the trial court erred in failing to appoint a receiver to take possession of the properties owned by the parties pending partition and distribution.

Paragraph Number I of Appellants' Original Petition in the severed cause reads as follows:

"Plaintiffs and Defendant are the only and surviving children of Juan A. Gonzales, deceased, and Isabel M. Gonzales, deceased, and are the sole beneficiaries under the joint and mutual will of Juan A. and Isabel M. Gonzales, Deceased, husband and wife, and Plaintiffs are seeking a declaratory judgment, as provided in Article 2524–1, for the construction of the Last Will and Testament of Juan A. and Isabel M. Gonzales, and for other relief as hereinafter set out."

In Paragraph VII of Appellants' said petition they allege their construction of the will in eight separate sub-paragraphs, and there are allegations in other sections of their petition relating to appellants' position in connection with construction of the will. Appellee's First Amended Original Answer and Cross-Action, filed in the severed cause, (subject to various pleas, including one to the jurisdiction of the Court), also alleged his construction of the will and asserted that the court should enter declaratory judgment as prayed for by him.

Article 2524–1, V.A.C.S. (Uniform Declaratory Judgments Act) reads in part as follows:

"Sec. 2. Any person interested under a * * * will, * * * whose rights, status, or other legal relations are affected * * * may have determined any question of construction or validity arising under the instrument, * * * and obtain a declaration of rights, status, or other legal relations thereunder."

*   *   *   *   *   *

"Sec. 4. Any person interested as * * * devisee, legatee, * * * or cestui que trust, in the administration of a trust, or of the estate of a decedent, * * * may have a declaration of rights or legal relations in respect thereto:

"(c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

*   *   *   *   *   *

"Sec. 12. This Act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered."

Some of the difficulties on this appeal are occasioned by the findings of the trial court that "the terms of such will are not ambiguous" and "the Court finds no need to construe those parts of such will that are not matters of controversy." The trial court did not specifically find what matters were not in controversy and it is extremely difficult to determine from the record the subjects which might be included in the finding. In the severed proceeding, appellants plead rather fully their cause of action for declaratory judgment and construction of the will. However, appellee's responsive answer in that case began with a general denial and was followed by rather restricted allegations as to construction of the will. I agree with appellants' position that, at best, the judgment of the trial court amounted to only a partial construction of the will. It is apparent to me from an examination of the record in the severed cause that the judgment of the trial court does not fully determine the questions of construction or validity arising under the will, nor does it fully declare the rights, status or legal relations arising under that instrument, as might have been done under Art. 2524–1, V.A.C.S.

In my view there are several essential matters established by the record which when placed in context and given proper

effect permit this Court under applicable principles of law to reform or expand the judgment of the trial court so as to afford declaratory judgment relief which may furnish guidance to the trial court and the parties in connection with final disposition of the case. These matters and the holdings I would make in connection therewith are as follows:

1. The will in question is a joint and mutual will, contractual as well as testamentary. See Weidner v. Crowther, 157 Tex. 240, 301 S.W.2d 621 (1957).

2. There is but one will here involved. There is no question here of a second separate will executed by the surviving testator. Whatever property Isabel M. Gonzalez owned at her death—whether acquired under the joint and mutual will or after the death of Juan A. Gonzalez, her husband—passed to the beneficiaries under her will. Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588 (1954) is not in point here on the question of property acquired in her individual right by the surviving testator after the death of her husband who was the other testator of a joint and mutual will. In the cited case the Supreme Court specifically held as follows:

"* * * We find no language in the 1928 will evidencing an intention to dispose of the estate owned by the survivor at death, and we therefore hold that only the property owned by B. H. Murphy and Annie E. Murphy—either or both, at the time of the death of B. H. Murphy—was within the terms of the 1928 will. As to all property acquired by Annie E. Murphy in her individual right after B. H. Murphy's death, she had the full right of ownership and power to dispose of the same by will or otherwise as she saw fit."

In the instant case, as above stated, there is not only the absence of a second separate will by the surviving testator, but the joint and mutual will of Juan A. and Isabel M. Gonzalez, in Paragraph V thereof expressly provides "and the surviving spouse devises and bequeaths all of his or her estate under their seven (7) children in equal parts."

3. The interests of the seven children of the testators were vested at the time of death of Juan A. Gonzalez to the extent of an undivided ⅛ interest each in all of the properties then owned by the testators, but the children did not have a right of possession at the earliest until after (1) the surviving testator (Isabel M. Gonzalez) died, and (2) the beneficiary attained 21 years of age, and (3) the beneficiary made demand for his share of the estate. The actual ⅛ interest to be received by each beneficiary is, of course, subject to the administration and the expenses thereof on the estate of Juan A. Gonzalez, and subject to the other provisions of the will, particularly Paragraphs VIII and IX thereof to the extent the authority therein was exercised. Even where the above-mentioned three conditions are satisfied, it appears that, as a practical matter, the actual possession of appellants' interests might be delayed because of the dispute which has arisen between appellants and appellee as is evidenced by the institution of this suit. The record herein demonstrates the existing controversies between appellants and appellee concerning the basis, manner and means for partition and distribution of the properties belonging to them under the joint and mutual will of their parents, and particularly under Paragraph VII thereof. The district court has jurisdiction and ample authority to resolve such issues between the parties in this case. See Griggs v. Brewster, 122 Tex. 588, 62 S.W.2d 980 (1933); Hutcherson v. Hutcherson, 135 S.W.2d 757 (Tex.Civ.App., Galveston, 1939, wr.ref.). In the latter case the court said in part:

"The Supreme Court in the case of Griggs v. Brewster, 122 Tex. 588, 62 S.W.2d 980, in an opinion by Chief Justice Cureton, in passing on the exact question presented in this appeal announced the rule that the district court

has jurisdiction of a suit brought against an independent executor for the recovery of property, both real and personal, alleged to belong to an estate and withheld from the assets of the estate, and to determine the ownership of such property, and to decree a partition thereof, as well as the other property of the estate, among those entitled thereto, and that the probate court has no jurisdiction of controversies between an independent executor and the devisees under the will."

4. In addition to the interests of the seven children which vested in them at the time of the death of Juan A. Gonzalez, as mentioned in the preceding paragraph, each of them is also entitled under the joint and mutual will, as legatees and devisees, to receive a ⅐th undivided interest in and to all property owned by Isabel M. Gonzalez at the time of her death, irrespective of when or how she acquired the ownership of it, subject to administration of her estate in accordance with law and the terms of the will.

5. Isabel M. Gonzalez did not acquire a life estate in the ⅞ undivided interest of the joint property devised and bequeathed to the seven children of the testators upon the death of Juan A. Gonzalez. Although Isabel M. Gonzalez was granted extensive rights of possession and control of said ⅞ interest under the joint and mutual will, the provisions thereof do not create a life estate in her. In this respect I agree with the holding of the majority opinion. This holding does not in any way detract from the conclusion that Isabel M. Gonzalez acquired a ⅛ undivided interest in all of the properties owned by her and Juan A. Gonzalez at the time of his death.

6. The majority opinion, in the next to last paragraph thereof, states in part:

"There were two estates under the joint will and both could be probated. Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165 (Tex.Sup.1946). The first was the trust left by the husband Juan A. Gonzalez.

This consisted of the properties owned by Juan A. Gonzalez and Isabel M. Gonzalez at the time of his death. The second was the property, if any, acquired by Isabel M. Gonzalez in her individual right after Juan A. Gonzalez' death and which she may have accumulated as beneficiary under the trust or otherwise. Murphy v. Slaton, 154 Tex. 35, 273 S.W. 2d 588 (Tex.Sup.1954). The trust estate was not a part of Isabel M. Gonzalez' estate."

I have been unable with certainty to ascertain the meaning and effect of the quoted statements. I have heretofore pointed out that Murphy v. Slaton is distinguishable from the instant case. This does not in any way question the applicable law announced or reiterated in that decision. There is but one joint and mutual will in this case and there is no second separate will executed by the surviving testator as in Murphy v. Slaton; and the will here expressly disposes of the properties of both testators regardless of which one dies first. I cannot reconcile the statement that "The trust estate was not a part of Isabel M. Gonzalez' estate" with the sentence preceding it and with other language in the majority opinion relating to the alleged creation of a testamentary trust by Juan A. Gonzalez. I further do not see any necessity for the holding in the majority opinion that a testamentary trust was created by the will here involved. As a practical matter the holding may not make any substantial difference (except possibly for expenses of administration and related matters). Section 37, Texas Probate Code, as amended in 1969, and its predecessors have for many years provided in substance that when a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and that the executor or administrator shall have the right to possession of the estate as it existed at the death of the testator or intestate; and that the

executor or administrator "shall recover possession of and *hold such estate in trust* to be disposed of in accordance with law." (Emphasis supplied.)

In my view, the authorities dealing with the rules applicable to joint and mutual wills, those which are contractual as well as testamentary, are of much more assistance in the instant proceeding than is reliance upon a separate testamentary trust theory. See Weidner v. Crowther, 157 Tex. 240, 301 S.W.2d 621 (1957); Chadwick v. Bristow, 146 Tex. 481, 208 S.W.2d 888 (1948); 61 Tex.Jur.2d, Wills, Section 119, pages 237–241; Southwestern Law Journal, Vol. 23, No. 1, page 18, March 1969.

The foregoing discussion relates primarily to appellants' points 1–10 and some of the contentions under their point 22. I would reform the judgment of the trial court in the respects mentioned and render declaratory judgment accordingly.

With reference to appellants' remaining points of error, particularly those concerning partition and distribution, it appears from the final order of the trial judge that he was of the opinion that such issues should not be reached in the severed proceeding then before the court. It may well be that the trial court concluded that the questions involved in the severed matters remaining for disposition could be resolved when such questions were reached at the trial on the merits without the necessity of declaratory relief. In the absence of a showing of abuse of discretion, I believe the action of the trial court involved in appellants' remaining points does not present reversible error.

I concur in the holdings of the majority opinion to the extent that I have expressly agreed with the same. To the extent that I have disagreed with such holdings, I respectfully dissent.

I would reform the judgment of the trial court in the respects herein indicated, and as reformed, would affirm it.